## COURT OF APPEALS.

### Nov. 23, 1909.

## THE PEOPLE v. MARGARET TEAL.

(196 N. Y. 372.)

(1). SUBORNATION OF PERJURY—FALSE TESTIMONY MUST BE MATERIAL.

The materiality of false testimony is an essential ingredient of the crime of perjury at common law and that rule is embodied in our statute. One can only be guilty of subornation of perjury where perjury has been committed. Hence, a person cannot be guilty of an attempt to commit the crime of subornation of perjury where the false testimony solicited, if given, would not be perjury by reason of its immateriality.

(2). SAME—THAT IT MAY BECOME MATERIAL, BY SUBSEQUENT AMENDMENT OF COMPLAINT, NOT SUFFICIENT.

Where the testimony solicited is not false in any matter material to the issue presented by the complaint in an action, the fact that it may become material by a subsequent amendment of the complaint, will not support an indictment and sustain a judgment of conviction.

(3). SAME.

The complaint which had been served in an action for divorce alleged one single and specific act of adultery; defendant herein was indicted and convicted of attempted subornation of perjury in that she attempted to induce a person to testify to another specific act of adultery which was not alleged in such complaint. *Held*, that the evidence was not false in any matter material to the issue under the pleadings as they stood at the time of defendant's alleged offense, and since there was neither perjury nor subornation thereof, there could be no such attempt to commit the crime of subornation of perjury as to fall within the statute relating to attempts at commission of crimes.

People v. Teal, 133 App. Div. 35, reversed.

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 18, 1909, which affirmed a judgment of the Court of General Sessions of the Peace in the county of New York rendered upon

a verdict convicting the defendant of the crime of attempted subornation of perjury.

The indictment under which the defendant has been tried and convicted charges her with the crime of attempted subornation of perjury which is alleged to have been committed in an effort to obtain false testimony to be used in an action for absolute divorce brought by one Helen K. Gould against her husband, Frank J. Gould. The indictment specifies that on the 20th day of July, 1908, while the divorce action was pending in the city of New York, and before it was brought to trial, the defendant herein, together with two other persons named, "unlawfully, corruptly, wickedly and maliciously did feloniously and willfully solicit and instigate and attempt and endeavor to suborn, procure and induce one Mabel MacCauslan to go and appear upon the hearing which should thereafter be had before such referee as should thereafter be appointed to take proof of the facts charged in the complaint," as a witness for the plaintiff in the divorce action and to falsely testify to certain matters which were material and relevant to the issues therein, to wit, that at some time in the month of March, 1908, she had "seen the said Frank J. Gould, when only partly dressed come out of the bedroom of a woman known as Bessie Van Doren, or Bessie De Voe, in a certain apartment, in an apartment house called the Glenmore" in the city of New York. This specification of the indictment is followed by a formal negation of the truth of the testimony thus sought to have been procured by the defendant from the said Mabel MacCauslan.

The complaint in the divorce action of *Gould v. Gould* was served on June 24th, 1908, and the only act of adultery charged against the defendant therein is alleged to have been committed on July 25th, 1905, in a house of prostitution in the town of North Sydney, Cape Breton, Dominion of Canada, with a woman whose name is alleged to have been unknown to the plain-

tiff. On July 20th, 1908, when the acts charged in the indictment were committed, the defendant's answer in the divorce action had not been served.

Upon the trial of the charge presented in the indictment, the prosecution produced evidence which, to say the least, tended to support the verdict of the jury convicting the defendant. The defendant introduced no evidence. The judgment of conviction entered upon the verdict has been unanimously affirmed by the Appellate Division and the defendant now appeals to this court.

*Henry W. Unger, Maurice B. Blumenthal* and *Daniel W. Blumenthal* for appellant. There was no proof upon the trial of the existence and pendency of an issue in the Gould action. This was a fatal defect of proof. (2 Bishop's Crim. Proc. §§ 913, 921; 1 Bishop's New Crim. Law, § 489; *U. S. v. Howard*, 3 Sumner, 12.) The matter alleged to have been attempted to be suborned by the defendant was not in any legal sense material to or, to quote part of the language of the indictment, " in support of the material facts charged in the complaint of the said Helen K. Gould." (*Stevens v. Stevens*, 54 Hun, 490; *Davis v. Davis*, 4 Misc. Rep. 454; *Budd v. Budd*, 55 App. Div. 113; *Beadleston v. Beadleston*, 20 N. Y. S. R. 21; *Germond v. Germond*, 6 Johns. Ch. 347; 1 Bishop's Cr. Law, § 208; *People v. Morse*, 3 N. Y. Cr. Rep. 104; *Regina v. Phillpotts*, 5 Cox C. C. 363; *Chamberlain v. People*, 23 N. Y. 88; *Wood v. People*, 59 N. Y. 123.) In the conceded status of the action of *Gould v. Gould* on July 20, 1908, no false swearing before a referee could constitute perjury. (*Lambert v. People*, 76 N. Y. 220; *People v. Gillette*, 126 App. Div. 665.) If the false swearing which it is claimed the defendant sought to suborn did not and could not constitute perjury at the time of its attempted suborning, then there could be no conviction of an attempt at subornation of perjury. (*People v. Jaffe*, 185 N. Y. 497; *People v. McLaughlin*, 150 N. Y. 365.)

*William Travers Jerome, District Attorney (Robert C. Taylor* of counsel), for respondent. The defendant was to be judged, not by the result, but by the " condition of her mind and her conduct in the attempted consummation of her design." (People v. Moran, 123 N. Y. 254; *People v. Sullivan,* 173 N. Y. 122; *People v. Conrad,* 102 App. Div. 566; affd., 182 N. Y. 529.) The testimony sought to be suborned was material. (*People v. Martin,* 77 App. Div. 405; 175 N. Y. 315; *Chamberlain v. People,* 23 N. Y. 88; *Regina v. Phillpotts,* 5 Cox C. C. 363; *Wood v. People,* 59 N. Y. 117; *People v. McKinney,* 3 Park. Cr. Rep. 510; *Hutchins v. Blood,* 25 Wend. 413; *Crookshank v. Gray,* 20 Johns. 344; *Comm. v. Pollard,* 12 Metc. 225; *Comm. v. Grant,* 116 Mass. 17; *Rex v. Griepe,* 12 Mod. 142; *Reg. v. Schlesinger,* 2 Cox. C. C. 200; *Reg. v. Courtney,* 7 Cox C. C. 111; *Reg. v. Naylor,* 11 Cox C. C. 13; *People v. Courtney,* 94 N. Y. 490.) A section providing for punishment of subornation of perjury must receive a liberal construction in order to promote justice. (Penal Code, § 11; *People v. Martin,* 175 N. Y. 319; *People v. Abeel,* 182 N. Y. 415; *Ingraham v. U. S.,* 155 U. S. 434; *Goode v. U. S.,* 159 U. S. 663; *People v. Jackson,* 191 N. Y. 293.)

WERNER, J.:

This appeal presents a question which is both interesting and important. Can a person be convicted of attempted subornation of perjury, upon evidence which would not support a conviction upon the charge of perjury, if the attempt had been successful? As applied to the concrete facts of record the question is whether the defendant was properly convicted of an attempt at subornation of perjury even though the person sought to be suborned could not have been convicted of perjury, if the false testimony attempted to have been procured had been actually given under oath. As appears from the foregoing statement of facts, the defendant was charged with having attempted

to procure false testimony from one MacCauslan, in an action for a divorce brought by one Helen K. Gould against Frank J. Gould. At the time when this attempt was made the complaint had been served, and the only issuable charge it contained was that the said Frank J. Gould had been guilty of an act of adultery committed with a woman unknown to the plaintiff, in a house of prostitution in the town of North Sydney, Cape Breton, Dominion of Canada, on the 25th day of July, 1905. That was the precise and definite issue tendered by the complaint. What was the false testimony which the defendant herein is charged with attempting to procure? That in the month of March, 1908, Mabel MacCauslan saw Frank J. Gould, the defendant charged with the above-mentioned specific act of adultery, come out of a bedroom in the apartment of one Bessie Van Doren (alias De Voe) in the city of New York, under circumstances which might tend to support a charge of adultery between the man Gould and the woman Van Doren at that time and place. Thus we see that the traversable issue of record was whether Gould had committed adultery in a Canadian brothel in 1905, and that the false testimony solicited from MacCauslan was designed to show a separate and distinct act of adultery not referred to in the complaint, committed by Gould in the city of New York in the year 1908. The bare statement of these facts, unrelated both in pleading and in circumstance, is sufficient to draw attention sharply to the utter irrelevancy, incompetency and *immateriality* of the false testimony solicited, to the issue tendered by the complaint in *Gould v. Gould.* (*Stevens v. Stevens,* 54 Hun, 490; *Germond v. Germond,* 6 Johns. Ch. 347; *Reg. v. Southwood,* 1 Fost. & Fin. 356.)

From time immemorial the common law has made the materiality of false testimony an essential ingredient of the crime of perjury. From their earliest beginnings our statutes have always embodied that rule. Our penal laws, but recently re-

codified, have continued it. That, in short, is the unquestioned law of this state. (Penal Code, sec. 96; Penal Law, sec. 1620.) The language of the statute is that a person who willfully and knowingly testifies falsely, *in any material matter,* is guilty of perjury.

What, then, is subornation of perjury? The answer is that a person who wilfully procures or induces another to commit perjury is guilty of subornation of perjury. (Penal Code, sec. 105; Penal Law, sec. 1632.) This plain language of the statute needs no elucidation. Subornation of perjury can only be predicated upon perjury committed. If the person alleged to have been suborned has not committed perjury, the alleged suborner cannot be held guilty of subornation of perjury. (Wharton Cr. Law, vol. 2 [10th ed.], sec. 1330; *Com. v. Smith,* 11 Allen, 243.)

What is attempted subornation of perjury? Turning again to the statutes we read that "an act, done with intent to commit a crime, and tending but failing to effect its commission, is an attempt to commit *that* crime." (Penal Code, sec. 34; Penal Law, sec. 2.) "That" crime, in the case at bar, is subornation of perjury, and could only have been committed if the false testimony, if given, had constituted perjury. It seems to follow, therefore, that if there could have been no subornation of perjury, there was in fact no attempted subornation of perjury within the meaning of the statute. If the person actually giving false testimony is not guilty of perjury, the person through whose procuration the testimony is given cannot be guilty of subornation of perjury and, by the same rule, an unsuccessful attempt to do that which is not a crime when effectuated, cannot be held to be an attempt to commit the crime specified.

If this reasoning is sound, it is clear that the question before us resolves itself into the inquiry whether the actual giving of the false testimony set forth in the indictment would have con-

stituted the crime of perjury. We have already said that the false testimony which the defendant attempted to procure was irrelevant, incompetent and immaterial to the only issue presented by the complaint in *Gould v. Gould.* We may pass without discussion the elements of irrelevancy and incompetency. These could have been waived. They are, moreover, not essential to the commission of perjury as defined in the statute. It is different, however, as to materiality. If false testimony is not material it cannot support an indictment for perjury. The testimony upon which such a charge is predicated must be false " in any material matter." The testimony solicited of Mac-Causlan was not false in any matter material to the issue in *Gould v. Gould,* and we do not see how the conviction in the case at bar can be sustained unless we adopt the suggestion that if the false testimony, although not material when solicited, might have become so by a subsequent amendment of the complaint, then the facts prove upon the trial support the charge laid in the indictment and sustain the judgment of conviction. We cannot entertain this view. If the charge of perjury could not have been sustained in case the false testimony had actually been given under the complaint as it then stood, no subsequent change in the pleading or issue could relate back to the time when the act was committed. It would be highly dangerous to make the charge of perjury dependent upon issues or events arising after testimony has been given. If that were the rule it would be unsafe to testify with the utmost truthfulness upon any issue which might, by any possibility, be changed by subsequent events. No such shifting rule ought ever to be engrafted upon a system of jurisprudence in which the protection of individual rights is a cardinal principle.

It is suggested that this is a narrow and technical view of the question which will permit to go unpunished many who are morally culpable as though the false testimony given or solicited by them were actually material to an issue in existence

when the false testimony is given or solicited. There are several answers to this intimation. We read the statute as we find it. If it is ever deemed wise to take out of the statute defining perjury the element of materiality in the false testimony given, suborned or solicited that should be done by legislative enactment and not by judicial construction. We admit that the rule of strict construction applicable to penal statutes is modified by the legislative declaration that the Penal Code (now Penal Law) shall be " construed according to the fair import of their terms to promote justice and effect the objects of the law," but we do not think that this means that an essential part of a statute may be ignored for the purpose of promoting justice in a particular case.

Beyond all this, however, the legislature seems to have provided for just such cases as the one at bar, in which it may be impossible to prove the commission of the crimes of perjury and subornation of perjury as defined in the statutes, but which yet disclose acts that should be punishable because they are prejudicial to the orderly and righteous administration of justice. The former Revised Statutes under the general title relating to perjury and subornation of perjury provided: " Every person who shall, by the offer of any valuable consideration, attempt unlawfully and corruptly to procure any other to commit willful and corrupt perjury, as a witness, in any cause, . . . shall, upon conviction, be punished by imprisonment in a state prison not exceeding five years." (2 R. S. p. 682, sec. 8.) When the Penal Code was enacted this section, much broadened in scope and effect, was taken out of the chapter relating to perjury and subornation of perjury and placed under the new title " Falsifying Evidence." Under the latter title the section as redrawn reads: " A person who gives or offers or promises to give, to any witness or person about to be called as witness, any bribe, upon any understanding or agreement that the testimony of such witness shall be thereby in-

-fluenced, *or who attempts by any other means fraudulently to induce any witness to give false testimony* or to withhold true testimony, is guilty of a felony." (Penal Code, sec. 113; Penal Law, sec. 2440.) It will be observed that the provision relating to the giving, offer or promise of a bribe to influence a witness, is supplemented by the declaration that any attempt " *by any other means fraudulently to induce any witness to give false testimony or to withhold true testimony,*" shall constitute a felony.

If this amplification of the statute has any significance whatever, it must mean that any fraudulent attempt by a person to induce another to testify falsely is punishable as felonious, even though it does not fall within the purview of the statutes relating to perjury in which the test of the materiality of the false testimony is still retained. That this seems to have been the legislative purpose behind this enlarged or supplemental statute is further evidenced by the fact that the section was placed, not under the general title " Perjury and Subornation of Perjury," but under a special classification entitled " Falsifying Evidence." If this is the fair import of the phrase and collocation of the amended statute, it will readily be perceived that the danger which is said to lurk in too literal a construction of the statutes relating to perjuries is much more apparent than real. All that seems to be necessary to the prosecution of persons guilty under either of these branches of our criminal law, is to frame indictments under the proper statutes and make proofs accordingly.

Thus far we have proceeded upon the assumption that the statutes are clear and unequivocal. We are referred to certain decisions, however, which are said to indicate, if they do not explicity hold, that the test of materiality is to be applied to the subject of an action and relates to the issue at any stage of a case, rather than to an issue as framed when the testimony is given. Lest silence as to these cases should be misconstrued

into acquiescence as to their effect, we shall briefly review them. It is said that the question has been settled ever since Lord COKE's definition of perjury as "a crime committed when a lawful oath is ministered by any one that hath authority, to any person, in any judicial proceeding, who sweareth absolutely and falsely in a matter material to the issue, or cause in question, by their own act, or by the subornation of others." (3rd Inst. 165.) We see nothing in this definition that conflicts with our own views as to the effect of statutes relating to perjury. When "issue" and "cause" are synonymous, as in the case at bar, it matters not which expression is employed; and it may well be that in other cases where these terms are not convertible, there may be materiality of testimony as to the general cause, although it may not exist as to one or more of the issues involved. It is but a play upon words to say that in an action for a divorce based upon a single specific act of adultery there can be any distinction between "cause" and "issue." It is true that the cause of action is adultery, but it is the adultery alleged, and that is the issue. Proof of any other act of adultery than that which is specifically alleged is no more material than proof of a larceny or any other kind of tort. The case of *Reg. v. Phillpotts* (2 Den. Cr. Cas. 302) is also cited; but what was that case? The defendant therein had testified that a certain paper was a true copy of a will, and that he had examined one of the record books to ascertain whether it was a correct transcript. The court was ready to receive the paper, but it was withdrawn. The defendant had not examined the record and had testified falsely in that regard. The paper was not competent, although the defendant's testimony respecting it was material to the litigation. Upon the subsequent prosecution for perjury the court held that the defendant could be convicted, and that "the question whether the perjury had been committed must depend upon the state of things when the witness left the box" and not upon what happened thereafter. In

*Reg. v. Gibbons* (9 Cox Cr. L. Cas. 105) a similar situation arose. The person accused of perjury had sworn in another litigation to the credit of a witness. The testimony, although not relevant, was held material, and upon that ground was held to support a charge of perjury. Our own state affords an excellent example of the rule laid down in the two English cases just referred to. In *Chamberlain v. People* (23 N. Y. 85) the plaintiff in error was convicted of perjury. The charge was predicated upon false testimony given by him in an action for a divorce against his wife upon the ground of her alleged adultery. She had borne a child, and he testified that he never had sexual intercourse with her. The fact testified to by the husband was most material to the issue, but the husband was not a competent witness to the fact. This court decided that the criminal prosecution depended upon the materiality of the evidence in the action for divorce, and not upon the competency of the witness. The rule enunciated in that case is now embodied in our penal laws in the following language: " It is no defense to a prosecution for perjury that the defendant was not competent to give the testimony." (Penal Code, sec. 98; Penal Law, sec. 1623.) When the distinction between competency and materiality, thus clearly made both in decisions and statutes, is given its proper effect, there can remain no doubt that when testimony is material, although concededly incompetent, perjury may be assigned upon it; and the converse of the proposition must logically follow. A witness may be competent, and his testimony may be relevant, but if it is not material to the issue, it cannot be the basis for a charge of perjury. Our attention is called to the cases of *People v. Moran* (123 N. Y. 254) and *People v. Gardner* (144 N. Y. 119). It is said that they are authorities for the doctrine that the question whether a person has made an attempt to commit a crime depends upon the mind and intent of the actor and not upon the result of the act. That is quite true as regards the crimes of larceny and extortion, which were the subjects of discussion in those cases,

and it may be true in many other instances where the law looks only to the intent without reference to result. But a different rule has been established as to the crime of perjury. The statutes declare that materiality of the false testimony is of the essence of the crime. Without it the crime cannot be committed no matter what the intent may be. The same rule applies to subornation, and where there is neither perjury nor subornation thereof, there can be no such attempt to commit either of these crimes as to fall within the statutes relating to attempts at commission of crimes.

It may be said in closing that although the unanimous affirmance at the Appellate Division of the judgment of conviction herein precludes an examination in this court of the facts of record, the question which we have discussed is effectually raised by appropriate exceptions to rulings in the trial court upon the admission of evidence. The judgment of conviction herein should be reversed and a new trial ordered.

HAIGHT, J. (dissenting). The defendant, Margaret Teal, with two other persons, were jointly indicted for the crime of an attempt to commit the crime of subornation of perjury, on the 20th day of July, 1908, at the borough of Manhattan, city and county of New York. At that time there was pending in the Supreme Court, in that county, an action brought by Helen K. Gould, as plaintiff, against her husband, Frank J. Gould, in which she sought to procure a judgment dissolving the marriage contract and divorcing the parties. The indictment charges that afterwards and before the trial of the action, the defendant and those indicted with her, " unlawfully, corruptly, wickedly and maliciously did feloniously and wilfully solicit, procure and induce one Mabel MacCushlan to go and appear upon the hearing which should thereafter be had before such referee as should thereafter be appointed to take proof of the facts charged in the complaint in the said action as a witness for and on behalf of the said Helen K. Gould, the plaintiff in the said action, as

aforesaid, and upon the said hearing to commit perjury and falsely to swear and give in evidence, before such referee, certain matters material and relevant to said action and to the issues therein and in support of the material facts charged in the complaint of the said Helen K. Gould in the said action in substance and to the effect following; that is to say, that she, the said Mabel MacCauslan, had at some time in the month of March, 1908, seen the said Frank J. Gould, when only partly dressed, come out of the bedroom of a woman known as Bessie Van Doren, or Bessie De Voe, in a certain apartment, in an apartment house called the Glenmore." The indictment further charges that Mabel MacCauslan had never seen Frank J. Gould come from the bedroom of the woman named, in that apartment house or elsewhere, of which the defendant well knew.

Upon the trial of the defendant, upon the indictment aforesaid, the jury rendered a verdict of guilty, and our examination of the evidence given on behalf of the People has led us to conclude that it amply sustains the verdict. It, however, appeared that at the time of the attempted suborning of Mabel MacCauslan, the complaint in the divorce action had been recently served, and the period within which plaintiff had the right to serve an amended complaint had not yet expired, and that the answer of the defendant to such complaint was not served until seven days thereafter. It further appeared that the complaint, as it then stood, alleged that the defendant on the 25th day of July, 1905, while cruising on the yacht *Helenita*, entered the harbor at North Sydney, Cape Breton, Dominion of Canada, and there committed adultery with a woman, whose name was to the plaintiff unknown, and that no other misconduct of the defendant was therein charged.

The appellant now insists that the attempted subornation of perjury of which she had been convicted was not committed, for the reason that the false testimony solicited by her, to be

given by Mabel MacCauslan, was not material upon the allegation alleged in the complaint. That in order to make the false testimony material a complaint must allege misconduct on the part of the defendant at the time and place and with the person charged in the complaint. The question thus presented is not only interesting but of great public importance. For if the contention of the appellant is sound it discloses a very serious defect in our criminal statutes. Persons desiring a dissolution of their marriage contracts may themselves, or through private detectives or other persons, manufacture evidence and procure others to falsely swear to transactions that never took place without fear of punishment, if such suborning is done before an issue joined in an action brought. A person committed under a charge of murder may through his agents suborn witnesses with impunity to falsely testify to an alibi, or other matters constituting a defense, if it is only done before indictment is found, for until then it would not be material to any pending issue in the criminal action. And this may be done with reference to every charge throughout the entire catalogue of crimes, without the power to prosecute the suborning person for any crime whatever.

The Penal Code, which was in force at the time of the transaction charged in the indictment, provides, in substance, that a person who swears or affirms, in an action, or special proceeding, or upon any hearing or inquiry, or on any occasion in which an oath is required by law, or is necessary for the prosecution or defense of a private right, or for the ends of public justice, or may lawfully be administered, willfully and knowingly testifies falsely, in any material matter, is guilty of perjury. (Section 96.) "A person, who willfully procures or induces another to commit perjury, is guilty of subornation of perjury." (Section 105.) "An act, done with intent to commit a crime, and tending but failing to effect its commission, is an attempt to commit that crime." (Section 34.) It will thus be seen

that in order to constitute perjury the false testimony must be material. This is the provision of the Code and it was one of the requirements of the law. Was, therefore, the false testimony which Mabel MacCauslan was solicited to give material within the requirements of the provision of the Code referred to? In construing these provisions it is provided that " The rule that a penal statute is to be strictly construed does not apply to this Code or any of the provisions thereof, but all such provisions must be construed according to the fair import of their terms, to promote justice and effect the objects of the law." (Section 11.)

As we have seen, the action that was brought by Mrs. Gould against her husband was to obtain a divorce upon the statutory grounds. At the time of the transaction in question the complaint had been served, but the time had not expired in which she had the right to serve an amended complaint. No issue had then been joined by the service of an answer. The only misconduct charged against the defendant, as the complaint then stood, was alleged to have occurred at North Sydney. If, therefore, the materiality of the false testimony which the defendant sought to have given pertained only to issues actually framed by the pleading, then effect must be given to appellant's contention. But to my mind the materiality is not so limited. Lord COKE, in 3rd Inst. 165, defines perjury as follows: " It is a crime committed when a lawful oath is ministered by any one that hath authority, to any person, in any judicial proceeding, who sweareth absolutely and falsely in a matter material to the issue, or cause in question, by their own act, or by the subornation of others." What was the cause in question? Mrs. Gould sought a divorce. She was entitled to it if she could produce evidence which would establish the statutory offense. The evidence which the defendant undertook to have the MacCauslan girl falsely deliver would, if true, have shown the statutory offense and thus establish the " cause in action." It must be

borne in mind that the provisions of the Code must be construed according to the fair import of their terms to promote justice and effect the objects of law. The limit of the word " material," to issues actually joined in pleadings, is not the promotion of justice nor was it the legislative intent. No such defect in our criminal law was ever intended or supposed to exist.

The appellant further contends that the testimony was not competent and could not be received in evidence under the issues as they stood. Possibly not. But the right to amend the complaint still existed, and as soon as the new evidence, or what was claimed to be evidence, was discovered, it was a simple matter to allege it in an amended pleading. It was competent evidence to be given in an action for a divorce and was most material, if the pleading had given the proper grounds. In the case of *Reg. v. Phillpotts* (2 Den. Cr. Cas. 302) a paper had been produced which the defendant had falsely sworn was a copy of a record. It was not received in evidence, for the reason that the record was the better evidence. In reviewing the conviction of Phillpotts for perjury, his counsel contended, as the appellant's does here, that the question was as to whether the evidence to which the defendant swore was material to the issue then being tried, and inasmuch as it was not admitted in evidence it was immaterial. It was held by Lord CAMPBELL, C. J., all the rest of the justices concurring, that the circumstance that the evidence was inadmissible did not affect the question of perjury as it could not purge the false swearing; that if the evidence of the prisoner had been received it would have been material to the issue and, consequently, the false oath of the prisoner amounted to perjury.

In *Reg. v. Gibbons* (9 Cox Cr. L. Cas., 105) it was held that, although evidence was inadmissible in point of law, yet having been admitted and being relevant to the credit of a material witness in the cases, perjury could be assigned upon it. Cock-

BURN, C. J., in delivering the opinion, refers to the case of *Reg. v. Phillpotts* with approval, and says that " although in point of strictness the evidence was open to objection, yet it does not lie in the mouth of the defendant to say that the question was not one as to which he was not bound to speak the truth."

In *State v. Waddle* (100 Iowa, 57; 69 N. W. Rep. 279) the statute provided that " If any person endeavor to incite or procure another to commit perjury, though no perjury be committed, he shall be punished." It was held that the state need not show that there was in fact a case pending.

In the case of *Chamberlain v. People* (23 N. Y. 85) the husband, in a case for divorce, was permitted to testify that he had no sexual intercourse with his wife, and yet she had borne a child. It was held that, although in an action between husband and wife, under the provisions of the Code, neither was a competent witness against the other to prove non-intercourse. Yet, inasmuch as the evidence had been given, the husband was guilty of perjury.

My attention has been called to no case in this state, nor in our sister states, in which the precise question here presented has been determined. There are two or three decisions in other states which hold that an action must be pending under the phraseology of the statute existing in their respective states. Under our statute, as we have seen, a person who testifies to any material matter to be true which he knows to be false in an action or a special proceeding or upon any hearing or inquiry, or on any occasion in which an oath is required by law, or is necessary for the prosecution or defense of a private right, or for the ends of public justice, is guilty of perjury. The suborning of a witness must of necessity precede the actual delivering of the false testimony, and the attempt to suborn must precede the actual consummation of the crime of suborning. There is nothing in the provisions of our statutes that makes the attempt to suborn a witness depend upon the accuracy of the

pleader, provided the testimony is material upon the results sought to be obtained in the action. As to that, I have already shown that the evidence, if true, would have been sufficient to authorize the granting of a divorce. It was, therefore, in my judgment, material within the meaning of the Code.

As we have seen, the charge in this case was an attempt to commit the crime of subornation of perjury. It is not claimed that the crime of perjury was committed, nor even that subornation of perjury was consummated. It was only an attempt at subornation. It does not, therefore, matter whether all of the acts constituting perjury or subornation of perjury were present. The offense of attempting to commit a crime of perjury, as defined by the statute, depends upon the mind and intent of the person attempting the act and not upon the result, or the fact that in that particular instance it could not be perpetrated. So that a person may be convicted of an attempt to commit a larceny, even though there may be no property to steal. So also a person may be convicted of an attempt of extortion, even though the person upon whom the attempt was made was under no duress or fear, but instead was acting in connection with the police in order to bring about the extorter's arrest and conviction. (*People v. Moran,* 123 N. Y. 254; *People v. Gardner,* 144 N. Y. 119, 9 N. Y. Crim. 404.) In the former case, the defendant was passing around among the people gathered in a crowd and was seen to thrust his hand into a pocket of a woman and withdraw it therefrom empty. RUGER, Ch. J., in delivering the opinion of the court, said, " We are of the opinion that the evidence was sufficient to authorize the jury to find the accused guilty of the offense charged. It was plainly inferable from it that an intent to commit larceny from the person existed, and that the defendant did an act tending to effect its commission, although the effort failed. The language of the statute seems to us too plain to admit of doubt, and was intended to reach cases where an intent to commit a

crime and an effort to perpetrate it, although ineffectual, coexisted. Whenever the *animo furandi* exists, followed by acts apparently affording a prospect of success and tending to render the commission of the crime effectual, the accused brings himself within the letter and intent of the statute." In the latter case, EARL, J., in delivering the opinion of the court refers to the case of *People v. Moran* with approval, and says: "The question whether an attempt to commit a crime has been made, is determinable solely by the condition of the actor's mind and his conduct in the attempted consummation of his design. . . . An attempt is made when an opportunity occurs and the intending perpetrator has done some act tending to accomplish his purpose, although he is baffled by an unexpected obstacle or condition." Applying the rule of these cases to the one under review, it is quite apparent that the defendant intended to induce the MacCauslan girl to give false testimony in the action which Mrs. Gould had brought against her husband. The evil purpose was apparent. An opportunity occurred to her and she intended to accomplish her purpose. True, she was baffled by an unexpected condition. It turned out that the transaction which she had induced the girl to swear to was not alleged in the complaint, and consequently could not be given in evidence; but the criminal intent existed, and all of the elements constituting the attempt to commit subornation, of perjury were established by the evidence. It would, therefore, seem to follow that if a person could be convicted of an attempt to commit larceny when there is no property to steal, and if a person can also be convicted of an attempt to commit extortion when there is no duress or fear, a person could commit an attempt at subornation of perjury even though the pleading in the action in which the perjury was to be committed, had not set forth in the allegations the precise act which the false testimony was designed to establish.

It is now suggested that the defendant might have been indicted under section 113 of the Penal Code, entitled " The bribing of witnesses." So, also, she might have been indicted under section 112 of the Penal Code, entitled " Inducing another to commit perjury." But the fact that the act charged is a crime under two or more sections of the Code does not require a reversal if the person is properly convicted under the section of the Code upon which the indictment is founded. In such cases the duty devolves upon the grand jury and the district attorney of determining under which of the sections of the Code applicable the indictment shall be found; but I am unable to comprehend the difference between the provisions of section 113 and that under which the indictment in this case is found with reference to the subject in controversy. To my mind its provisions are subject to the same criticism that is made by the defendant to the section upon which she has been convicted and now asks for a reversal of the judgment. The provision is as follows: " A person who gives or offers or promises to give, to any witness or person about to be called as a witness, any bribe, upon any understanding or agreement that the testimony of such witness shall be thereby influenced, or who attempts by any other means fraudulently to induce any witness to give false testimony or to withhold true testimony, is guilty of a felony."

How can a proposed witness' testimony be influenced or how can he give false testimony or withhold true testimony when the testimony proposed to be given or withheld is not admissible and cannot be received in evidence upon the hearing or trial? If it has no materiality with reference to the subject-matter under investigation how can it harm or prejudice the rights of the parties or of the public? Should a joker induce a witness to state in his testimony that the moon was made of green cheese it might produce some merriment in the court room and the judge might commit the witness for contempt for

a breach of decorum; still it would hardly be claimed that the joker was guilty of a felony under the provisions of this section. False testimony has a well-understood meaning. It must be such as tends to the prejudice of the rights of others or the public and have some materiality upon the subject-matter under investigation, in order to make the giving of it a felony.

Again, it will be observed that the statute prohibits the bribing of a "witness or a person about to be called as a witness." Similar provisions have been enacted with reference to the bribing of a juror. As soon as a juror is drawn, under the provisions of the statute, the law casts about the individual jurors a shield preventing any person approaching them for the purpose of influencing their determination. So also the foregoing section of the Penal Code undertakes to protect a person summoned as a witness from like approach or influence, but the complainant in this case was not a witness or about to become a witness. She had not been summoned or subpœnaed. She was not known to either of the parties to the action, neither had they ever heard of her at the time that the defendant undertook to bribe her to give false testimony. It, therefore, appears to me that we should adhere to the beaten track followed in the *Moran* and *Gardner* cases, above referred to.

The judgment and conviction should be affirmed.

CULLEN, Ch. J., EDWARD T. BARTLETT and WILLARD BARTLETT, JJ., concur with WERNER, J.; GRAY and HISCOCK, JJ., concur with HAIGHT, J.

Judgment of conviction reversed, etc.

## NOTE ON SUBORNATION OF PERJURY.

**INDICTMENT.**

An indictment for conspiracy to cause one L. to be arrested for the crime of larceny, averred that in pursuance of the conspiracy the defendant caused and procured one W. to appear before a police justice and complain of L. for larceny and falsely swearing that L. had stolen money from her. The conspiracy was sought to be established by the act of procuring W. to make the complaint and falsely swear to the larceny committed. Held, that the facts did not show that W., in so swearing, committed the crime of perjury, and consequently the defendant was not guilty of the offense of subornation of perjury; and it followed that no felony being established, no merger of the misdemeanor in it did or could take place. Elkin v. People, 28 N. Y. 177.

Not essential to the validity of an indictment for the offense that it should aver that the accused incited or solicited the other person to commit perjury. The statute declares in what the attempt prohibited shall consist—the offer of a valuable consideration, and an averment of an offer of such a consideration for the purposes specified is sufficient. Stratton v. People, 81 N. Y. 629.

**EVIDENCE.**

The crime of subornation of perjury forms an exception to the general rule that a prisoner may be convicted upon the sole uncorroborated testimony of an accomplice. People v. Evans, 40 N. Y. 1.

A conviction of subornation of perjury affirmed by the Appellate Division does not call for a reversal by the Court of Appeals, on the ground that the testimony of the person alleged to have been suborned, and who had confessed his perjury, should have been wholly disregarded, where it is doubtful if the point was properly raised, and the trial judge of his own motion charged the jury that the witness was a self-confessed perjurer, and that they might give his testimony such credit as they found it deserved and that they could be aided by the surrounding circumstances of corroboration. People v. Van Tassel, 156 N. Y. 561.

On a trial for subornation of perjury, evidence of other attempts to induce other persons to testify falsely on the trial of the same action is admissible. People v. Van Tassell, 26 App. Div. 445.