OPINION OF THE COURT
Harold J. Rothwax, J.
The defendant herein has been charged in two counts with peijury in the first degree (Penal Law § 210.15) and in one count with tampering with a witness in the fourth degree (Penal Law § 215.10 [b]). The theory of the peijury prosecution is unusual, in that the defendant was neither a witness in the proceeding in which the peijury was allegedly committed nor a party to an agreement with the witness to commit the alleged peijury; rather the defendant is alleged to have deceived the witness into testifying to material facts which the defendant knew to be false, with intent to mislead the court and jury before which the defendant was tried in a previous prosecution.
The facts alleged in support of the People’s prima facie case are as follows: The defendant in September 1981 acted as intermediary in a sale of diamonds worth in excess of a million dollars from a jeweler to one Whitney Biddle. David Latner, a businessman, allegedly agreed to give the defendant credibility with the sellers by pretending that defendant was his associate, in exchange for a share of the diamonds. The sellers received an *495 ostensibly certified check drawn on the account of and indorsed by Whitney Biddle. The certification was false and the account nonexistent. In October 1981 defendant was arrested on a charge of grand larceny. He was indicted in February 1982. In August 1982 the defendant arranged a meeting in a Manhattan restaurant with a casual acquaintance, Charles Benoit. Benoit arrived first. The defendant arrived and was soon followed by two men who joined him and Benoit. During this brief encounter, the defendant introduced one of the men to Benoit as David Latner. This man introduced his companion to Benoit and to the defendant as Whitney Biddle. The defendant then joined these two men and left Benoit. Several months later, the defendant requested Benoit to testify in the upcoming trial about the encounter with Latner and Biddle. Benoit was confused about the date of the meeting, but eventually recalled with the defendant’s assistance. In January 1983 the defendant introduced Benoit and his proposed testimony to defendant’s lawyer. The trial on the grand larceny indictment began in March 1983. Latner testified about his purported assistance to the defendant in the larceny. Latner was asked by defendant’s counsel on cross-examination whether he had ever introduced Whitney Biddle to the defendant. Latner denied that he had done so. The defendant subpoenaed Benoit, who testified that such introduction occurred in September of 1981 [sic].[1] For reasons which are not apparent, Benoit never saw Latner at the trial. The defendant’s counsel argued that it was Latner, and not the defendant, who had engineered the swindle with the assistance of Whitney Biddle. The defendant was acquitted.
The prosecution subsequently produced evidence before a new Grand Jury that Whitney Biddle never existed and that a person posing as Biddle had executed the “certified” check, allegedly at defendant’s behest. This evidence was unavailable at the time of the grand larceny trial. There was also evidence before the Grand Jury that the men to whom Benoit was introduced in the Manhattan restaurant were neither Latner nor the supposed Biddle, but were two other men who resembled them. Statements of the defendant indicated circumstantially that he had obtained the assistance of these men to meet with Benoit in order to deceive Benoit into believing that Latner knew Biddle.
The prosecution’s theory of peijury is that the defendant staged the meeting, falsely introduced someone as Latner, who by prearrangement falsely introduced another as Biddle, and *496 subsequently solicited and subpoenaed Benoit in order to create testimony that David Latner had known a Whitney Biddle in 1981, which testimony the defendant knew to be false in several respects. The court finds that the essential falsehood consists in the statement of Benoit that it was David Latner who introduced him to a man whom he represented to be Whitney Biddle. The existence, vel non, of Whitney Biddle is therefore not an issue essential to proof of the alleged perjury. Perjury is proved by Latner’s testimony that he never made such an introduction and is corroborated by Benoit’s testimony that he did not in fact meet Latner, since identified to him (Penal Law § 210.50). The balance of the evidence suffices, prima facie, to show defendant’s agency.
The defendant does not dispute that the foregoing facts, if accepted as true, would establish the misdemeanor of tampering with a witness, which is committed when the accused “knowing that a person * * * is about to be called as a witness in an action or proceeding * * * (b) * * * knowingly makes any false statement or practices any fraud or deceit with intent to affect the testimony of such person” (Penal Law § 215.10 [b]). There is also no question that the same facts establish the elements of perjury in the first degree, in that the testimony was given; was false and material to the action; and was intentional and known to be false, albeit not by the witness (Penal Law § 210.15). The defendant’s motion to dismiss the perjury counts is centered upon this divergence between the immediate actor whose conduct is alleged to constitute the actus reus (the giving of false testimony), and the accused to whom the mens rea of the crime (knowledge of falsity and intent to deceive) is attributed. Specifically, the defendant argues that since the witness did not knowingly and intentionally testify falsely, there was no perjury which the defendant could have aided or abetted.
In suppdrt of this proposition, the defendant relies upon People v Teal (196 NY 372 [1909]), which entailed a prosecution for attempt to suborn perjury under the former Penal Law (Penal Law former § 1632, repealed L 1965, ch 1030). Teal held that “[i]f the person actually giving false testimony is not guilty of perjury [due to the immateriality of the testimony], the person through whose procuration the testimony is given cannot be guilty of subornation of perjury” (196 NY, at p 377). Teal distinguished “other instances where the law looks only to the intent without reference to result”, that is, attempts to commit crimes as to which no objective result (such as the material effect of testimony) was essential (196 NY, at p 382). Finally, Teal noted that there was another statute which applied to *497 attempts “ ‘fraudulently to induce any witness to give false testimony’ ” without regard to materiality (Penal Law former § 2440; 196 NY, at p 379).
It is the latter statute, rather than the subornation statutes, which is most analogous to our peijury statute as applied in the instant prosecution. This is evident in the case of People v Berkowitz (121 Misc 40 [Gen Sess, NY County 1923]), which was a prosecution under Penal Law former § 2440 upon facts strikingly similar to the present case. In Berkowitz the defendant arranged for one Foss, who knew the husband in a divorce action, to observe an unknown man, similar in appearance to the husband, in bed with an unknown woman, for the purpose of having Foss testify that he had seen the hapless husband in an act of adultery. The court rejected Berkowitz’s demur on the ground that no agreement had been made between him and the witness in regard to giving false testimony. The court observed that fraud included the use of “ ‘deliberate deception, practiced with the object of having a person believe something which is not the fact, to the prejudice of another.’ ” The court held that the felony of “falsifying evidence” (Penal Law former § 2440) could “be committed through an innocent agent, and that the person who feloniously procure[d] the false testimony [could] be held accountable [since] [i]n law, the act of the defendant in procuring [another] to give false testimony is tantamount to his personally giving the same.” (121 Misc, at p 43.)
Although this defendant could clearly have been indicted and tried under the relevant section of Penal Law former § 2440, that section and the subornation of peijury statutes were not retained under the revised Penal Law (compare, Penal Law §§ 215.00, 215.10, with Penal Law former §§ 2440-2442, 1632). This omission does not reflect a legislative judgment that there be no liability for inducing false testimony by deceit, but rather reflects a general restructuring of the scheme of culpability under the revised Penal Law which rendered these specific statutes unnecessary. This restructuring, based upon principles formulated in the Model Penal Code, emphasizes the culpability of an accused according to his autonomous acts and individual state of mind (Schwartz, An Interview with Prof Denzer, Drafting a New Penal Law for New York, 18 Buffalo L Rev 211, 252 [1969]; Wechsler, The Model Penal Code, 68 Colum L Rev 1425, 1428, 1435, n 27 [1968]). As a result, the revised Penal Law included the new crimes of solicitation (Penal Law art 100) and facilitation (Penal Law art 115) (Schwartz, supra, p 266), a unilateral form of conspiracy (People v Schwimmer, 66 AD2d 91, 93-94 [2d Dept 1978], affd 47 NY2d 1004), and elimination of the *498 defense of legal impossibility (Sobel, Anticipatory Offenses in the New Penal Law, 32 Brooklyn L Rev 257, 268 [1966]; Penal Law § 110.10) among other changes. The new formulation of culpability standards emphasizes the defendant’s state of mind and individual perception and deemphasizes factors extraneous to the defendant’s perception or control, such as the feigned complicity of supposed accomplices (People v Schwimmer, 47 NY2d, at p 1005; Penal Law §§ 105.30, 20.05 [1]), or the fortuity of a solicitee’s refusal to commit the crime (People v Lubow, 29 NY2d 58, 64 [1971]; Penal Law § 100.15), or the defendant’s mistaken perception of attendant circumstances (Penal Law §§ 110.10, 115.10).
It is apparent that a court confronted with the facts in Teal (supra), would reach a contrary result under the revised Penal Law. The defendant who solicited perjured testimony would be culpable regardless of the legal impossibility[2] of commission due to immateriality of the testimony solicited. (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 110.10, p 320). Moreover, as anticipated by the court in Teal (196 NY, at p 382), the revised Penal Law emphasizes the intent of the accused as much as the result of his conduct, so that what formerly may have constituted subornation of perjury is now subject to prosecution as criminal solicitation, attempted perjury or perjury as an accomplice, depending upon the proximity of the defendant’s conduct to his intended objective to offer false testimony (see, People v Mohammed, 122 Misc 2d 504, 505 [Sup Ct, NY County 1984]; Sobel, supra, at 271-272; compare, Hammer v United States, 271 US 620, 628 [1926]).
The foregoing dicta in Berkowitz’s case would, however, be the same. Among the changes in the revised Penal Law was statutory enactment of the principle of criminal liability through an innocent agent (see, e.g., People v Berkowitz, 121 Misc, at p 43). Specifically, a defendant who, acting with the mental culpability required for commission of an offense, solicits another to engage in conduct which constitutes the offense is liable as a principal upon commission of the offense by the other person even though the solicitee was unaware “of the criminal nature of the conduct * * * or of the defendant’s criminal purpose” or otherwise lacked the mental state required for commission of the offense in question. (Penal Law §§ 20.05, 100.15.)
The Model Penal Code is the same in substance, but more explicit:
*499 “A person is legally accountable for the conduct of another person when:
“(a) acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct”. (Model Penal Code § 2.06 [2] [Proposed Official Draft 1962].)
Among the examples given in the commentary to this section of the code is that of an agent who innocently makes false statements induced by the accused. (Commentary to Model Penal Code former § 2.04 [2] [a] [currently § 2.06 (2) (a)], at 17-18 [1953].)
Careful attention must be paid, in attributing the actions of a nonculpable agent to the accused, to the evidence of causation. (See, Lanham: Accomplices, Principles and Causation, 12 Melbourne U L Rev 490 [1980].) The overbearing influence of the accused upon the unwitting actor is the functional substitute for the community of purpose to commit the crime, which is the usual predicate for accomplice liability, and must be proved to the same extent. (See, e.g., People v La Belle, 18 NY2d 405, 411-413 [1966].) In this sense, the accused may be said to have solicited the actor’s conduct, rather than have aided it, insofar as solicitation includes the “attempt to cause” a criminal result. (Penal Law §§ 20.00, 100.05-100.13; see, 18 USC § 2 [b].) Moreover, there must be proof that the defendant’s mentally culpable state applied to his own actions in regard to the agent, as well as to the agent’s actions in regard to the prohibited result. (Penal Law § 15.15 [1]; cf. Robinson & Grall, Element Analysis in Defining Criminal Liability, 35 Stanford L Rev 681, 734-735 [1983].) In other words, with regard to perjury, there must be proof that the defendant intentionally caused the witness to make a false statement under oath, which statement the defendant did not believe to be true, and by which he intended to deceive. (Penal Law § 210.00 [5].)
Causation has two aspects, factual and legal or proximate. Proof of factual causation requires evidence that but for the defendant’s conduct the result would not have ensued in the manner proved. (See, e.g., People v Kibbe, 35 NY2d 407, 413 [1974]; People v Cable, 63 NY2d 270 [1984].) Proof of proximate causation requires evidence that the result was a reasonably foreseeable consequence of the defendant’s action. (People v Kibbe, supra, at pp 412-413; see, LaFave, Handbook on Criminal Law § 35 [1972].)
Deception or “fraud” (People v Berkowitz, supra) is a form of causation. The Penal Law (§ 125.25 [1] [b]) explicitly recognizes *500 deception used to induce suicide as the legal equivalent of intentional murder. In such cases, an innocent agent (the deceased) is the victim of a false impression (e.g., that the potion is not poison), purposefully created by the murderer in order to induce the agent to bring about the result intended by the murderer, which the agent neither intends nor anticipates. (See, Model Penal Code § 2.06 [l]-[6] [1962].) In such cases, there must be objective evidence which precludes the possibility of mistake or of autonomous action by the supposed innocent agent which supervenes the attempted influence of the accused. (See, Brenner — A Proposed Analysis of Criminal Offense of “Causing Suicide”, 47 Albany L Rev 62 [1982]; People v Kibbe, supra, at p 413.)
There is ample objective evidence of the defendant’s causation in this case. The defendant made admissions which indicate that he recruited impostors and arranged the encounter with intent to mislead the prospective witness. The defendant subsequently revived the witness’ recollection of the encounter to induce the witness to testify as defendant intended. The defendant presented the witness to his attorney. Finally, the defendant, through counsel, compelled the witness by subpoena to take an oath and by interrogation to testify as defendant anticipated and in a manner known by the defendant to be false. Thus the defendant was the factual and proximate cause both of the false impression and of the act of testifying by which it was presented to the court. The prima facie evidence indicates that he acted intentionally both in employing the deception and in inducing the testimony.
The defendant’s final argument that peijury should be treated differently than other crimes in regard to accomplice liability because it can only be committed by a person under oath (Penal Law § 210.00) is rejected for two reasons. Peijury is not unlike other crimes which by definition can only be committed by persons of a designated class (such as bribe receiving; see, e.g., People v Brody, 298 NY 352 [1949]). As to such crimes, the revised Penal Law expressly provides that it is no defense that the alleged accomplice is not a member of the definitional class of those with whom he acted (Penal Law § 20.05 [3]). The facts of the instant case are, if anything, more compelling, since the defendant placed the unwitting accomplice within the definitional class by means of a subpoena ad testificandum.
The court is not concerned, upon the facts of this case, that the combination of Penal Law provisions (Penal Law § 20.05 [1], [3]) designed to remove artificial barriers to personal liability will *501 impermissibly extend the scope of culpability beyond the legislative intent. Federal courts have held persons who cause members of a definitional class unwittingly to commit status crimes liable for those crimes as if the accused were members of the class, or as if the members had been willing accomplices (United States v Wiseman, 445 F2d 792 [2d Cir 1971], cert denied 404 US 967; United States v Ruffin, 613 F2d 408 [2d Cir 1979]; United States v Smith, 584 F2d 731, 734 [5th Cir 1978]; United States v Huber, 603 F2d 387 [2d Cir 1979]; 18 USC § 2 [b]). The principles underlying the sections are the same, that no one should avoid criminal liability by virtue of factors having no bearing upon his culpability. The legislative judgment is often to enhance punishment for those who attempt to obtain vicarious immunity by using innocent agents to commit crimes (Penal Law §§ 30.00, 100.05 [2]; §§ 100.13, 105.05 [2]; § 105.10 [2]; § 105.13). The defendant in the instant case directly caused the innocent agent to engage in conduct which constituted the actus reus of the crime of peijury, and incidentally, to assume the status necessary to commission of the crime. To refuse to apply both sections of Penal Law § 20.00 would be to disregard the express language of the statutes and the scheme of culpability enacted by the revisions of the Penal Law.
The defendant’s counsel, who represented him during the grand larceny trial and to whom the defendant initially produced the witness Benoit, must be recused since he is a necessary prospective witness for the prosecution as to the defendant’s agency and preparation in bringing Benoit before the court (see, e.g., People v Paperno, 54 NY2d 294, 299-300 [1981]).
The motion to dismiss the indictment is denied.[3]

. The two counts of peijury differ only in that the first recites the date of the encounter as September 1981 and the second gives no date. The distinction is appropriate, as it may bear on the issue of materiality of the alleged peijury.

. Of course, the lack of materiality would no longer preclude prosecution for perjury, in a lesser degree (Penal Law § 210.05).

. The court acknowledges with appreciation the research assistance of Joan Bianco, a Columbia Law School student, in the preparation of this opinion.