J. Irwin Shapiro, J.
At the conclusion of his trial without a jury (N. Y. Const., art I, § 2), under an indictment charging him with grand larceny, second degree, defendant has moved for its dismissal and thereby revived the question whether a would-be thief can be guilty of either a consummated or an attempted larceny when the coveted property is turned over to him with the knowledge and consent of the owner, by one of its agents, by prearrangement with the police, in order to supply a basis for the miscreant’s criminal prosecution.
The development of attempts to commit crimes apparently stems from the decision of the Kings Bench in Rex v. Scofield (1784) (Cald. 397). There, the defendant was tried for arson. He had placed a lighted candle among combustibles in a certain house, with intent to burn it. There was, however, no proof *15 of burning adduced. The court held that the completion of the criminal act was not required to constitute criminality if the attempt was committed with the necessary intent. It logically inquired (p. 400): “ Is it no offence to set fire to a train of gunpowder with intent to burn a house, because by accident, or the interposition of another, the mischief is prevented! ”
That attempts were indictable as such was restated and definitely determined in Rex v. Higgins (1801) (2 East 5). Fifty-six years later, the question of “ impossibility ” was raised for the first time in Regina v. McPherson (1857) (Dears. & B. C. C. 197, 201) when Baron Bbamweul said: “ The argument that a man putting his hand into an empty pocket might be convicted of attempting to steal, appeared to me at first plausible; but suppose a man, believing a block of wood to be a man who was his deadly enemy, struck it a blow intending to murder, could he be convicted of attemptinng to murder the man he took it to be! ”
Subsequently, in Regina v. Collins (1864) (9 Cox C. C. 497; 169 Eng. Rep. 1477) the court expressly held that attempted larceny was not made out by proof that the defendant pickpocket actually inserted his hand into the victim’s empty pocket with intent to steal, Chief Justice Cockbuku declaring (p. 499): “ [W]e think that an attempt to commit a felony, can only be made out when, if an interruption had taken place, the attempt could have been carried out successfully, and the felony completed of the attempt to commit which the party is charged.”
This very broad language, encompassing as it did all forms of “ impossibility ”, was subsequently rejected by the English courts and it was held that the inability of the pickpocket to steal from an empty pocket did not preclude his conviction of an attempted larceny. (Regina v. Ring [1892], 17 Cox C. C. 491; 66 L. T. N. S. 300.) The determination in that case, generally speaking, represents the existing state of the law in the United States (Sayre, “ Criminal Attempts ”, 41 Harv. L. Rev. 821, 855).
In this country it is generally held that a defendant may be charged with an attempt where the crime was not completed because of “physical or factual impossibility” whereas a “ legal impossibility ” in the completion of the crime precludes prosecution for an attempt (Smith, “ Two Problems in Criminal Attempts ”, 70 Harv. L. Rev. 422).
What is a “legal impossibility” as distinguished from a “ physical or factual impossibility ” has over a long period of time perplexed our courts and has resulted in many irreconcilable decisions and much philsophical discussion by legal scholars in numerous articles and papers in law school publications and by text writers. See for example:
*16 “ Contemporary Problems of Criminal Attempts” by Paul Kichyun Ryu, Professor of Law, Seoul National University in Korea (32 N. Y. Univ. L. Rev. 1170 [1957]).
“ The Effect of Impossibility on Criminal Attempts ” by John S. Strahorn, Jr. (78 U. of Pa. L. Rev. 962 [1930]).
‘ ‘ Criminal Attempts • — • The Rise and Fall of an Abstraction ’ ’ by Honorable Thurman W. Arnold, Dean of University of West Virginia Law School and visiting Professor of Law at Yale (later Associate Justice, United States Court of Appeals for the District of Columbia) (40 Yale L. J. 53 [1930]).
“ Criminal Attempts ” by Francis Bowes Sayre, Professor of Law, Harvard Law School (41 Harv. L. Rev. 821 [1928]).
“ Criminal and Non-Criminal Attempts ” by John W. Curran, Professor of Law, DePaul College of Law (19 Georgetown L. J., Part I, p. 185; Part II, p. 316 [1931]).
“ Criminal Attempts at Common Law ” by Edwin R. Keedy, Professor of Law Emeritus, University of Pennsylvania (102 U. of Pa. L. Rev. 464 [1954]).
The reason for the “ impossibility ” of completing the substantive crime ordinarily falls into one of two categories: (1) where the act if completed would not be criminal, a situation which is usually described as a “ legal impossibility ” and (2) where the basic or substantive crime is impossible of completion, simply because of some physical or factual condition unknown to the defendant, a situation which is usually described as a “ factual impossibility ”.
The authorities in the various States and the text writers are in general agreement that where there is a “ legal impossibility ” of completing the substantive crime, the accused cannot be successfully charged with an attempt, whereas in those cases in which the 11 factual impossibility” situation is involved, the accused may be convicted of an attempt. Detailed discussion of the subject is unnecessary to make it clear that it is frequently most difficult to compartmentalize a particular set of facts as coming within one of the categories rather than the other. Examples of the so-called “ legal impossibility ” situations are:
(a) A person accepting goods which he believes to have been stolen, but which were not in fact stolen goods, is not guilty of an attempt to receive stolen goods. (People v. Jaffe, 185 N. Y. 497.)
(b) It is not an attempt to commit subornation of perjury where the false testimony solicited, if given, would have been immaterial to the ease at hand and hence not perjurious. (People v. Teal, 196 N. Y. 372.)
*17 (c) An accused who offers a bribe to a person believed to be a juror, but who is not a juror, is not guilty of an attempt to bribe a juror. (State v. Taylor, 345 Mo. 325.)
(d) An official who contracts a debt which is unauthorized and a nullity, but which he believes to be valid, is not guilty of an attempt to illegally contract a valid debt. (Marley v. State, 58 N. J. L. 207.)
(e) A hunter who shoots a stuffed deer believing it to be alive is not guilty of an attempt to shoot a deer out of season. (State v. Guffey, 262 S. W. 2d 152 [Mo.].)
Examples of cases in which attempt convictions have been sustained on the theory that all that prevented the consummation of the completed crime was a “ factual impossibility ” are:
(a) The picking of an empty pocket (People v. Moran, 123 N. Y. 254; Commonwealth v. McDonald, 5 Cush. [59 Mass.] 365; People v. J ones, 46 Mich. 441).
(b) An attempt to steal from an empty receptacle (Clark v. State, 86 Tenn. 511) or an empty house (State v. Utley, 82 N. C. 556).
(c) Where defendant shoots into the intended victim’s bed, believing he is there, when in fact he is elsewhere (State v. Mitchell, 170 Mo. 633).
(d) Where the defendant erroneously believing that the gun is loaded points it at his wife’s head and pulls the trigger (State v. Damms, 9 Wisc. 2d 183).
(d) Where the woman upon whom the abortion operation is performed is not in fact pregnant (Commonwealth v. Tibbetts, 157 Mass. 519; People v. Huff, 339 Ill. 328; Peckham v. United States, 226 F. 2d 34). (See, also, to the same effect United States v. Cruz-Gerena, 49 B. R. 245; Stokes v. State, 92 Miss. 415; People v. Lee Kong, 95 Cal. 666; State v. Glover, 27 S. C. 602.)
In the University of Pennsylvania Law Review (vol. 78, pp. 963-964) the writer discusses the attempted breakdown of the “impossibility” distinctions into three categories. He says:
‘ ‘ Three kinds of impossibility have always been distinguished. The first is an intrinsic impossibility, arising when the means used by the actor are ineffectual in themselves [shooting with defective gun] * * * . The second kind is an extrinsic impossibility [shooting at a log believing it to be a person] * * * . The third kind is a legal impossibility arising because of the non-criminality of the result desired by the actor [attempted rape by one too young to be convicted of rape].
*18 ‘ ‘ Intrinsic impossibility excuses only when it prevents a substantial impairment of interest, extrinsic when it prevents any impairment and legal when it negatives the existence of the interest set up ” (p. 997).
After thus discussing the situation he comes to the conclusion that: “ This tri-partite division of impossibility into intrinsic, extrinsic, and legal, while covering the field entirely, is more a theoretical than a practical one ” (p. 963). A conclusion with which this court is in entire agreement.
The foregoing lines of demarcation laid down in the cases and by text writers as to when an attempt may and may not be successfully charged has been roundly criticized. Thus in Hall, General Principles of Criminal Law (2d ed., 1960, p. 589) the writer says: “There are no degrees of impossibility and no sound basis for distinguishing among the conditions necessary for the commission of the intended harm.”
And in the Yale Law Journal (vol. 40, p. 71) we find Judge Thurman W. Arnold saying, with regard to the artificiality of the distinctions attempted to be made, the following: “ The distinctions * * * are ingenious, but * * * they lead us either to absurd results or else to no results. ’ ’
In an exhaustive and extremely well-considered opinion on this subject in United States v. Thomas and McClellan (13 U. S. CMA 278, 32 CMR 278) decided on September 7, 1962 we find the United States Court of Military Appeals dealing with this subject and saying: “ The lack of logic between some of the holdings, supra; the inherent difficulty in assigning a given set of facts to a proper classification; the criticism of existing positions in this area; and, most importantly, the denial of true and substantial justice by these artificial holdings have led, quite naturally, to proposals for reform in the civilian legal concepts of criminal attempts. ’ ’
In that case the accused, among other things, was charged with an attempt to commit the crime of rape. It appeared, however, that the female with whom they had been drinking had died of a heart attack. They thought she was merely unconscious and decided to have sexual intercourse with her. The trial officer charged that “ there was no requirement that the victim be alive before the accused could be convicted of attempted rape.” The Board of Review disagreed holding that there could not be an attempt to commit the crime of rape because as a “legal impossibility” there could not be a consummated rape with a corpse, a live female being a necessary party to the accomplishment of that crime. The Board of Review concluded thusly because, it said, “ an attempt to commit a crime must be directed *19 to an object on which it is possible to commit the crime The United States Military Court of Appeals agreed that if the case before it were in a civil court the Board of Review’s determination would be correct, but it held that “ to follow civilian authorities into the intricacies and artificial distinctions they draw in the field of criminal attempts * * * would lead military jurisprudence into the morass of confusion as to criminal attempts in which civilian jurisprudence finds Itself immobilized, and from which heroic efforts are being made to extricate it. ’ ’
Some courts have by “ heroic efforts ” taken what I consider to be a progressive and more modern view of the subject than is permitted by the decisional law in this State. Thus, California has now abandoned the People v. Jaffe (185 N. Y. 497, supra) rationale that a person accepting goods which he believes to have been stolen, but which was not in fact stolen goods, is not guilty of an attempt to receive stolen goods and imposes a liability for the attempt (People v. Camodeca, 52 Cal. 2d 142), overruling its previous holding to the contrary in People v. Werner (16 Cal. 2d 216).
Returning now from the discussion of “ attempts ” to the facts in this case which I find to be as follows:
Prior to and at the time of the occurrences resulting in this prosecution, one Edwin Martinez was an employee of Long Island Drug Company, a division of the Ketcham Company, Inc., with a stock of drugs and drug products in its wholesale business establishment on New York Boulevard in Queens County. A short time before the date charged in the indictment defendant Rollino proposed that Martinez should steal from his employer certain of the products that it stocked, as opportunity permitted, and for which the defendant would pay Martinez. Although the latter pretended to agree to the proposal he promptly reported the matter to an official of Long Island Drug Company and he in turn called in a private detective agency. At the suggestion of one of the agency’s operators a responsible official of the Long Island Drag Company gave Martinez a package containing drug products having a wholesale value of $187, with instructions to bring it to the defendant in ostensible pursuance of the latter’s criminal plan. When informed of the availability of the merchandise, Rollino directed Martinez to meet him at a specified time in a designated parking lot in Queens County.
Martinez went to the parking lot in his Nash automobile. There he was joined by the defendant, who entered the car and received the package, for which Martinez asked $25. Rollino *20 offered — and his pseudo-accomplice accepted — $15 in payment therefor with defendant promising that he would do better the next time. Fearful that they were being watched, defendant told Martinez to leave the package in the Nash, lock it, hand over the keys and leave the lot. When Martinez complied, Hollino also left the parking lot but returned in his own car about a half hour later and stopped directly behind the Nash. He then got out, walked over to the Nash, reached in and picked up the package but, after a period of indecision in which he looked about the parking lot with evident apprehension, he put the package down again, closed the door and started to walk away. At that point the police, who had been called in by the detective agency, moved in and apprehended the defendant. Of course, he had been under their surveillance the whole time. When questioned, Hollino said that he had been sent to pick up the package by a man whom he knew only as James Dunne. When asked why, if that was the case, he did not take it, his only explanation was that he was scared and changed his mind about picking it up. His explanation of his status in the matter, as Dunne’s messenger, was, of course, untrue.
The evidence convinces me, beyond reasonable doubt, that defendant intended and endeavored to steal drugs or drug products from Long Island Drug Company by counselling and, as he thought, inducing and procuring its employee to do so (Penal Law, § 2) and that, on the date of the crime for which he was tried before me, he acted directly and overtly to realize, as he hoped, the gain contemplated by his previous incitement (id.). The discretion that he gave his pretended accomplice as to what would be stolen, and when, would not, of course, create any uncertainty of Hollino’s criminal liability had Martinez really acted corruptly, in advancement of defendant’s plan. (People v. Swersky, 216 N. Y. 471, 477; People v. Luciano, 277 N. Y. 348, 361.) But the employee had remained faithful to his employer and what defendant assumed to be the fruit of his crime had, in fact, been brought to him with the owner’s knowledge and consent.
Although it has been said that “ [it] is * * * no longer necessary to constitute larceny that the property should have been taken from the possession of the owner by a trespass (People v. Laurence, 137 N. Y. 517) ” (People v. Mills, 91 App. Div. 331, 341) the idea remains basic to the concept of what has come to be known as “ common law larceny”, that “ [i]f an \ individual owner voluntarily delivers his property to one who wishes to steal it there is no trespass ” (People v. Mills, 178 *21 N. Y. 274, 288) and consequently “ no crime committed by tlie defendant * * * because it was with the full consent ” (id., dissenting opinion of O’Brien, J., p. 295). A taking without consent is the sine qua non of that form of larceny (People v. Mills, 178 N. Y. 274, supra; People v. Page, 182 Misc. 253, 258; People v. Frank, 176 Misc. 416, 418; People v. Brady, 139 Misc 597, 599; 52 C. J. S., Larceny, § 21, p. 814) and the charged unsupportable if the owner or his authorized agent voluntarily consents to the taking ([1]), even if it is done only for the purpose of catching the thief and even though neither of them otherwise encouraged the evildoer to adopt and execute the criminal plan (People v. Mills, 178 N. Y. 274, supra; State v. Perrin, 316 Mo. 585; State v. Neely, 90 Mont. 199). As the court put it in one sentence in Stanton Motor Corp. v. Rosetti (11 A D 2d 296, 298): “ An essential element of common-law larceny is the taking of the property of another without his consent and against his will.”
Having determined that the defendant in this case may not be found guilty of the completed act of larceny because the drugs were not in fact taken from the owner without its consent, the next question is whether, under such circumstances, he may be found guilty of an attempt to commit larceny (Code Grim. Pro., § 444).
The answer would seem to be “ no ” for the very fact that prevents a conviction for the completed crime of larceny also precludes a conviction of an attempted larceny. “ [I]n the present case the act, which it was doubtless the intent of the defendant to commit, would not have been a crime if it had been consummated ” (People v. Jaffe, 185 N. Y. 497, 500, supra) and “ an unsuccessful attempt to do that which is not a crime when effectuated, cannot be held to be an attempt to commit the crime specified ” (People v. Teal, 196 N. Y. 372, 377, supra). When the owner’s agent offered the drugs to Hollino, to entrap him, defendant “ succeeded in what he attempted, but what he did was not criminal ” (People v. Jelke, 1 N Y 2d 321, 329). Since the completed act did not and could not as a matter of law constitute a larceny it is legally impossible for defendant to be guilty of an attempted larceny.
The Mills, Jaffe and Teal cases have been the subject of *22 analytic .discussion and much criticism ([2]) and while the comment on Jaffe and Teal in the Jelke case (supra, p. 329) is a summary and therefore not necessarily an approval of the rule of law laid down in those cases, that rule of law has never been modified or overruled in this State and it must, accordingly, be accepted and enforced by this court.
The defendant’s moral guilt is unquestionable. He intended to commit the crime of grand larceny and did everything that he could to implement and effectuate his criminal purpose and intent. That he cannot be adjudged legally guilty is due entirely to the existing state of the decisional and statutory law on the subject. Clearly a modification of the law in this regard, to make it less favorable to criminal elements is called for but this court may only adjudicate; it may not legislate.
In this connection, attention is called to the proposal of the American Law Institute for the adoption of a “ Model Penal Code ” which in section 5.01 defines “ Criminal Attempts ” in the following manner:
“ 1. Definition of attempt. A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:
“ (a) purposely engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or
“ (b) when causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing or with the belief that it will cause such result, without further conduct on his part; or
“ (c) purposely does or omits to do anything which, under the circumstances as he believes them to be, is a substantial step in a course of conduct planned to culminate in his commission of the crime.”
Tentative Draft No. 10 of the Model Penal Code (p. 25) makes obvious the reason and necessity for the adoption of the proposed section 5.01 when it says:
“ It should suffice, therefore, to indicate at this stage what we deem to be the major results of the draft. They are:
“ (a) to extend the criminality of attempts by sweeping aside the defense of impossibility (including the distinction between so-called factual and legal impossibility) and by drawing the line between attempt and non-criminal preparation further away from the final act; the crime becomes essentially one of criminal *23 purpose implemented by an overt act strongly corroborative of such purpose
The motion to dismiss the indictment is granted since an element essential to defendant’s legal guilt of either a larceny or an attempted larceny of the kind here charged is entirely lacking. Short-form order signed and entered.

. The foundational importance of consent to the obtaining or taking of property pervades the law of related crimes as, e.g., larceny by false pretenses (Penal Law, §§ 1290, 1290-a, 1293, 1293-b), unauthorized use of vehicles (id., §, 1293-a) robbery (id.,§§ 2120, 2123), extortion (id., §§ 850, 851, 854, 857) and, implicitly, blackmail (id., § 856).

. See in addition to the articles and texts hereinbefore mentioned, ■ 61 Col. L. Rev. 571, 578, 579 (1961).