**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Peter Harold KORN, Defendant-Appellee.**

No. 76–3848.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1977.

Robert W. Rust, U. S. Atty., Bruce E. Wagner, Asst. U. S. Atty., Miami, Fla., Hugh Culverhouse, Jr., Jacksonville, Fla., for plaintiff-appellant.

Michael S. Tarre, Miami, Fla., for defendant-appellee.

Before THORNBERRY, GODBOLD and FAY, Circuit Judges.

GODBOLD, Circuit Judge:

This case is another spinoff from *Oviedo v. U. S.,* 525 F.2d 881 (CA5, 1976).

The appellee Peter Korn was indicted for knowingly and intentionally attempting to distribute a controlled substance, 40,000 units of methaqualone. The defense moved to dismiss the indictment, and for purposes of the motion admitted that Korn had entered into negotiations with a government undercover agent and a government informer for the purchase of 40,000 methaqualone tablets. The negotiations were "successful" and it was agreed that Korn would purchase the tablets from the informer for $20,000.

The next day Korn gave the agent $20,000 and in return received four cartons which he (Korn) believed to contain genuine methaqualone tablets but actually contained only noncontrolled simulated methaqualone tablets. When Korn placed the cartons in his car he was arrested.[1] The district court granted the defendant's motion to dismiss on the basis of this court's decision in *Oviedo.* The government appealed pursuant to 18 U.S.C. § 3731.[2]

At the threshold, the government argues that dismissal of the indictment pursuant to Fed.R.Crim.P. 12(b)(1) was improper insofar as it was based on facts which should have been developed at trial. However, as we pointed out in *U. S. v. Miller,* 491 F.2d 638 (CA5, 1974), "[T]he propriety of granting a motion to dismiss an indictment under F.R.Crim.Pro. Rule 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." 491 F.2d at 647 (footnote omitted). If a question of law is involved, then consideration of the motion is generally proper. *U. S. v. Jones,* 542 F.2d 661, 664 (CA6, 1976). The parties to this appeal, as well as the district court, consist-

---

1. Although the government challenges what it terms the "completeness" of the above facts, it does not challenge their accuracy.

2. The appellee concedes that there is no issue of double jeopardy present in this case.

ently treated Korn's motion to dismiss as involving a straightforward question of law, i. e., given this court's decision in *Oviedo,* does the admitted transfer of a noncontrolled substance as a matter of law negate criminal liability of the purchaser for attempted possession of a controlled substance with intent to distribute. The district court held, as a matter of law, that transfer of a noncontrolled substance did negate criminal liability on the part of the transferee.[3]

■ The starting point for our analysis is *Oviedo.* In *Oviedo* the defendant/appellant arranged to sell heroin to a government undercover agent. When the sale was made the agent arrested Oviedo. A subsequent search revealed that Oviedo had two more pounds of supposed heroin hidden in a television set. However, tests showed that the supposed heroin was, in reality, procaine hydrochloride, a noncontrolled substance. Oviedo claimed that he knew he did not have heroin and that he was merely trying to "rip off" the buyer. In spite of this, the jury found that Oviedo subjectively believed he was selling heroin, and it convicted him of attempted possession with intent to sell. On appeal this court reversed the conviction on the ground that totally apart from reliance on the accompanying *mens rea,* the objective acts performed by Oviedo (negotiations for the sale of heroin, agreement, and transfer of a noncontrolled substance) did not unequivocally support the conclusion that Oviedo intended to sell heroin. 525 F.2d at 885. This court did not hold that transfer of a noncontrolled substance was a determinative factor which automatically canceled out any possible liability for attempted possession of a controlled substance with intent to sell. What the court did in *Oviedo* was to require that the objective acts of the defendant, taken as a whole, strongly corroborate the required culpability. The admitted facts in the case at bar meet this requirement. There are present all of the same objective facts which were present in *Oviedo* —negotiation for sale of a controlled substance, agreement, and transfer of a noncontrolled substance. However, there is an additional fact which makes Korn's conduct relatively unequivocal—the transfer by him of $20,000. Taken as a whole, these acts strongly corroborate Korn's subjective intent to purchase methaqualone tablets.[4] Moreover, there is another distinction. In *Oviedo* the act which rendered the totality of the defendant's objective acts equivocal (transfer of a noncontrolled substance) was an act undertaken by the defendant. Thus, logically, it could either corroborate or nullify Oviedo's underlying culpability. Here, however, the act which Korn claims makes his conduct equivocal, was an act performed by the government, the transfer of a noncontrolled substance. Thus, it is not a relevant reflection of Korn's underlying intent.

REVERSED.

---

3. In addition, a defense is capable of determination upon a Fed.R.Crim.P. 12(b)(1) motion to dismiss "if trial on the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *U. S. v. Covington,* 395 U.S. 57, at 60, 89 S.Ct. 1559, at 1561, 23 L.Ed.2d 94, at 99 (1969). As we discuss below, the instant defendant admitted to enough facts for the district court to hold his motion to dismiss to be without merit.

4. Indeed, given the admitted facts of negotiation and agreement to purchase methaqualone it is difficult to imagine any innocent explanation for Korn's expenditure of $20,000. Unlike Oviedo, who could plausibly urge that he was merely trying to rip off the government agent by transferring procaine hydrochloride, Korn would be hard pressed to claim that he intended to spend $20,000 on milk sugar, chalk, or whatever substitute the government used for the methaqualone.