UNITED STATES of America, Plaintiff,

v.

William E. PARRAMORE, Raymond Wilford, Jr., Lorenzo Forch, a/k/a "T.C.", and Harold K. Brown, Defendants.

No. CR–89–0128 EFL.

United States District Court, N.D. California.

Aug. 28, 1989.

John D. Lyons, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

Geoffrey A. Hansen, Federal Public Defenders Office, San Francisco, Cal., for Raymond Wilford Jr.

Harold J. Rosenthal, San Francisco, Cal., for William E. Parramore.

William Osterhoudt, San Francisco, Cal., for Harold K. Brown.

Gregory Guy–Smith, San Francisco, Cal., for Alonzo Force.

## ORDER DENYING MOTION TO DISMISS INDICTMENT

LYNCH, District Judge.

### I. INTRODUCTION

Defendants are charged with attempted money laundering in violation of 18 U.S.C. section 1956(a)(2)(B). They have moved to dismiss the indictment, invoking the defense of impossibility. Having considered the oral arguments, briefs in support of and opposition to the motion, and the supplemental memoranda prepared subsequent thereto, the Court hereby denies the motion without prejudice for the reasons given below.

### II. DISCUSSION

The indictment alleges that the defendants sought to conceal the proceeds of drug trafficking by arranging to transport the money from banks in Panama and Hong Kong to accounts in the United States. In fact, as the government concedes, no such money existed; the cocaine trafficker with whom the defendants were allegedly conspiring was a government agent.

Section 1956(a)(2)(B) provides that

(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—

\*   \*   \*   \*   \*   \*

(B) knowing that the monetary instrument or funds involved in the transportation represent the proceeds of some form of unlawful activity and knowing that such transportation is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law

shall be sentenced to a fine of $500,000 or twice the value of the monetary instrument or funds involved in the transportation, whichever is greater, or imprisonment for not more than twenty years, or both.

Defendants argue that "knowing" funds are ill-gotten requires both that one believes it to be true and that, in fact, it *is* true. If the funds do not exist, the latter condition cannot be satisfied; the offense is impossible.

#### A. *The Impossibility Doctrine*

■ The field of impossibility has been well-plowed. *See generally* Enker, *Impossibility in Criminal Attempts—Legality and the Legal Process*, 53 Minn.L.Rev. 665 (1969). There is no need to cover that same ground here, and particularly no point in theorizing about the difference between factual and legal impossibility, if there be any difference. Suffice it to say that the common law has rejected the impossibility defense. It will not avail the robber to say there was no money in the till; the murderer, that the gun was not loaded—as long as each believed otherwise at the time, they are guilty of an attempt to do that at which they would have succeeded if the facts had been as they supposed them to be. *Accord United States v. Quijada*, 588 F.2d 1253, 1255 (9th Cir. 1978).

Here the government seeks the opportunity to prove that the defendants attempted to launder what they believed to be drug money. As Enker notes, contemporary jurisprudence proscribes the attempt which could not succeed because a necessary circumstance for the substantive offense was missing:

> The policy grounds supporting this position are well known.... Stated concisely, the defendant's mens rea is the same as that of a guilty person. By committing the proscribed act he has demonstrated his readiness to carry out his illegal venture, and therefore he has shown himself to be as deserving of conviction and as in need of correctional handling as the guilty defendant who does the act under [all] the proscribed circumstances.

Enker, *supra*, at 668.

Acknowledging the common law tradition, the federal courts have severely restricted the impossibility defense in the area of narcotics offenses. *See, e.g., United States v. Pennell*, 737 F.2d 521, 524 (6th Cir.1984) (upholding conviction on proof of subjective intent to buy actual drugs where ersatz drugs were substituted); *United States v. Innella*, 690 F.2d 834, 835 (11th Cir.1982) (same); *United States v. Korn*, 557 F.2d 1089, 1091 (5th Cir.1977) (same).

The courts do require that defendant's objective conduct unequivocally corroborate the required intent to purchase or sell actual narcotics. The latter scenario poses the more difficult problem: a dealer who sells an innocuous white powder instead of cocaine behaves in a manner consistent with both guilt and innocence, at least innocence of a drug offense if not fraud. *United States v. Oviedo*, 525 F.2d 881, 885 (5th Cir.1976).

The same is not true where the fiction is perpetrated by the *government*. "The government's unannounced use of sham cocaine cannot possibly be a 'relevant reflection of [defendant's] underlying intent.'" *Pennell*, 737 F.2d at 526, *quoting United*

States v. McDowell, 705 F.2d 426, 428 (11th Cir.1983); *Innella*, 690 F.2d at 835; *Korn*, 557 F.2d at 1091.

This applies with equal force to the sham drug money here. It adds nothing to the proof of a defendant's intent to require the government to deposit in some bank somewhere actual currency seized in the course of a drug raid. The defendant's "knowledge" and the jury's perception of it would remain unchanged. Those who innocently conduct financial transactions without the requisite knowledge are protected by the reasonable-doubt standard for proof of their intent, not by the fact that the money was real.

The Third Circuit buttressed this view of impossibility with a look at legislative intent, concluding that Congress prohibited the impossibility defense for in-choate crimes like attempt under the controlled-substance statutes. *United States v. Everett*, 700 F.2d 900 (3rd Cir.1983). "The history of narcotics legislation in this country 'reveals the determination of Congress to turn the screws of the criminal machinery —detection, prosecution and punishment— tighter and tighter.'" *Albernaz v. United States*, 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981), *quoting Gore v. United States*, 357 U.S. 386, 390, 78 S.Ct. 1280, 1283, 2 L.Ed.2d 1405 (1958).

There is no reason to believe that the Ninth Circuit would disagree. It has rejected the impossibility defense in other circumstances, substituting the objective corroboration test discussed above. *See United States v. Bagnariol*, 665 F.2d 877, 895 (9th Cir.1981) (adopting 5th Circuit rule that impossibility does not defeat guilt if there exist "objective acts to unequivocally corroborate the necessary criminal intent"), *citing United States v. Brooklier*, 459 F.Supp. 476 (C.D.Cal.1978).[1]

Defendants' position is weakest under the second count of the indictment, in which the defendants are charged with *conspiracy* to violate the money-laundering statute. They concede that, in this Circuit,

---

1. The *Quijada* court, in a 1978 case involving the *sale* of soap powder as heroin, required that "proof of what a defendant supposed the facts to be ... must be established beyond a reasonable doubt." 588 F.2d at 1253.

the ability to achieve the object of a criminal conspiracy is irrelevant to guilt. *See United States v. Everett,* 692 F.2d 596 (9th Cir.1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); *compare with United States v. Pietri,* 683 F.2d 877, 879 (5th Cir.1982) ("The crime of conspiracy is complete upon the formation of the illegal agreement. The fact that the cocaine which they thought they were receiving was a fake substance does not affect their intent to obtain the genuine article.")

Defendants do claim, nevertheless, that the conspiracy count here cannot survive under *Everett,* which "disregard[s] the legal possibility or impossibility of achieving a criminal result" but does require "significant objective facts to corroborate unequivocally the criminal intent in a conspiracy...." *Id.* at 600. There is no criminal intent to corroborate, argue the defendants, because it isn't a crime to launder fictional money. Joint Reply to Government's Opposition to Motion to Dismiss at 5. The defendants offer this tautological reading of the corroboration rule in an attempt to lift themselves up by the bootstraps: the categorical failure of corroboration assumes the existence of the impossibility defense, which itself obtains only if the corroboration fails. The intent of which the rule speaks is clearly that to commit the crime defined by the facts *as the defendant supposed them to be.*

## B. *The Statutory Language*

The Court must next determine whether or not the general rule on impossibility should apply to the particular statute in question, given its unique text and legislative history. Both the wording of the statute and its history present something of a puzzle; there is no result here which completely squares logic, language, and purpose. In attempting to do so, the Court gives weight to the general decline of the impossibility defense and acknowledges that Congress has consistently favored a generous enforcement mechanism as part of its vigorous anti-drug policies.

One who violates section 1956(a)(2) must transport funds *"knowing* [that they] represent the proceeds of some form of unlawful activity...." Defendants argue that they could not know this if the funds did not exist. To reject the impossibility defense here, they say, does violence to the ordinary meaning of the word "know" by reading it as "believe."

The Court accepts that its decision of necessity equates the statutory "know" with the everyday "believe." But the law is never so simple and rigid that every definitional question can be answered by resort to the dictionary. As defendants point out, Congress has indeed used "believe" in other statutes to mean just that. And yet federal courts have consistently read "know" to mean "believe" where the results comport with congressional purpose and common sense. Under 21 U.S.C. section 841(a)(1), it is unlawful "for any person knowingly or intentionally" to distribute controlled substances; under section 846, it is unlawful to attempt the same. Under the majority rule, one can "knowingly" attempt to distribute heroin or cocaine even if the substance is not genuine—that is, as long as the *belief* that it was heroin or cocaine is corroborated by objective behavior. *See, e.g., Pennell,* 737 F.2d at 524 (upholding conviction for attempt to violate section 841(a)(1)); *Everett,* 700 F.2d 900 (same); *Korn,* 557 F.2d 1089 (same).

By respecting the commonplace meaning of "know," the defendants would do violence to other language in the statute, language presumably selected with as much care by Congress. To violate section 1956(a)(1), a defendant must knowingly attempt a transaction which *"in fact* involves the proceeds of specified unlawful activity." The "in fact" does not appear in (a)(2). If both (a)(1) and (a)(2) require that the funds actually exist—i.e., if they offer an impossibility defense—then the "in fact" is a superfluity.

In complying with the Court's request for jury instructions, the defendants took the opportunity to address this difference in statutory language. Based on the definitions provided in subsection (c), they argue that (a)(2) and (a)(1) cover exactly the same conduct. Thus, they conclude, the

extra "in fact" element of (a)(1) makes no sense—the same proof should be required under (a)(2).

Of course, if (a)(1) does include that element, the two subsections do *not* cover the same conduct. Eliminating the only difference between the two, if such it be, makes even less sense. The defendants throughout have urged this Court to give full effect to the literal wording of the statute, only to abandon that position here.

The possible overlap of these two subsections—but for the additional element of actual proceeds—is not inherently implausible. Congress may well carve out a subset of acts otherwise covered by one penal rule and create a second offense requiring a different proof. That the different elements might be more easily proved in any given case hardly implicates the logic of the arrangement; it may be exactly what Congress had in mind. Nor is it problematic, *pace* the defendants, that the two laws which otherwise overlap are grouped under one section number rather than two.

The authority which the government cites goes even further: where one provision requires proof of a fact which another does not, then a defendant may be punished under *both* for the same conduct. *See, e.g., United States v. Laurins,* 857 F.2d 529, 542 (9th Cir.1988). Defendants suggest that (a)(1) and (a)(2) are no more than *alternative* bases for a single penalty, noting that the punishment under each is the same. Even so, that some conduct could be punished under either—i.e., that the subsections are not mutually exclusive—need not give pause. The "choice" to prosecute under the offense more easily proved is the necessary result of the limits of language. Legislators can be only so precise in defining boundaries without gaps or redundancy. Greater precision, if possible, would be used to eliminate the alternative with the *superfluous* elements. In the absence of any indication that Congress intended otherwise, giving effect to the words "in fact" is less perverse than ignoring them altogether.

*Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), which defendants cite, simply does not control the result in this case. The *Liparota* court was interpreting a statute whose intent requirement was obscured by the ambiguous placement of an adverb. It rejected the government's interpretation which, by reading the *mens rea* requirement out of the statute, would "criminalize a broad range of apparently innocent conduct" by unsuspecting citizens. *Id.* at 426, 105 S.Ct. at 2088. In so doing the Court referred to another section under which the defendant could have been charged and in which the requisite intent was clear.

The statute here is quite different. The words "in fact" are not ambiguous, standing alone or in their statutory context. Nor does their presence or absence affect the *mens rea* of the guilty defendant, as the analysis of impossibility should demonstrate. Finally, the Court cannot lose sight of the fact that it must interpret (a)(2)'s "knowing"; the analysis of "in fact" in (a)(1), to which the defendants would apply *Liparota,* is only one, oblique means of arriving at that end.

## C. The Legislative History

A definitive reading of (a)(1) and (a)(2) is complicated by the fact that Congress added an (a)(3) which essentially eliminates the impossibility defense.[2] The amendment might be Congress acknowledging that its original intent to prohibit the defense was obscured by the language of the statute; on the other hand, as defendants urge, it might represent a change of mind over what types of situations the law should cover. The text of (a)(3) and its history indicate that it might be some of both; they do *not* show, however, that Congress itself believed that, prior to the amendment, *(a)(2)* required actual illegal funds.

As amended, section 1956(a)(3) provides that

Whoever, with the intent—

---

**2.** Subsection (a)(3) was added pursuant to Pub.L. 100–690 on November 18, 1988, some

months after defendants allegedly attempted to launder the fictional drug money of this case.

(A) to promote the carrying on of specified unlawful activity;

(B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or

(C) to avoid a transaction reporting requirement under State or Federal law, conducts or attempts to conduct a financial transaction involving property represented by a law enforcement officer to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph, the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.

Addressing the proposed (a)(3), Senator Joseph Biden, chairman of the Judiciary Committee, remarked that "the present statute does not provide for such operations because it permits a conviction only where the laundered money 'in fact involves the proceeds of specified unlawful activity.'" 134 Cong.Rec. S17,360 (Nov. 10, 1988). He attributed that language, of course, to 1956*(a)(1)*. Rather than change the language of (a)(1), he offered an entirely new amendment because he also wanted to fine-tune the level of intent for stings:

> The first part of the amendment contains a mens rea requirement that is stricter than that in 1956*(a)(1)*. The defendant would have to have specific intent to promote specified unlawful activity, to conceal what he believes to be the proceeds of such activity, or to avoid reporting requirements. It would not be sufficient, as it is under *(a)(1)*, that the defendant merely know that the transaction was being conducted with the second or third of those purposes in mind.

**3.** Earlier that year, Representative Michael Oxley offered "sting" amendments to both (a)(1) and (a)(2). *See* 134 Cong.Rec. H7904 (Sept. 22, 1988). They were rejected in favor of the Senate version.

*Id.* at S17,366 (emphasis added). Of (a)(2), which does not contain the offending language, he said nothing. Nowhere on record does Congress purport to address a deficiency in (a)(2). Its intent to dispense with actual money in the pursuit of launderers is clear.[3]

## III. CONCLUSION

The Court concludes only that the defendants do not have an absolute right to an impossibility defense. Their inability to complete the laundering offense *could* prevent their conviction if the government fails to corroborate their criminal intent as per the test discussed *supra*. The Court must review the evidence offered at trial in order to determine whether or not a jury could find that intent beyond a reasonable doubt. *See United States v. Posey*, 864 F.2d 1487, 1492 n. 4 (9th Cir.1989) (corroboration test for impossibility defense "goes to the sufficiency of the evidence"). The motion to dismiss is premature. *See United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1451 (9th Cir.1986) (Rule 12(b) motion raising questions of law concerning intent of defendant could be postponed where claim depends on questions of fact not segregable from trial evidence on guilt.)

For the reasons given above, the defendants' motion to dismiss is denied without prejudice.

IT IS SO ORDERED.

The Court makes no finding on whether a sting or impossibility defense would be allowed under (a)(2) *after* the passage of (a)(3). It relies on (a)(3) only as a reflection of what Congress may have intended *before* the amendment.