## UNITED STATES of America

v.

## Francisco Martin DURAN, Defendant.

### Crim. No. 94–447 (CRR).

United States District Court, District of Columbia.

April 18, 1995.

As Corrected May 25, 1995.

578

Eric A. Dubelier, Brenda J. Johnson, and Chrisellen R. Kolb, Asst. U.S. Attys., Washington, DC, Eric H. Holder, Jr., U.S. Atty., for District of Columbia, for the U.S.

A.J. Kramer, Federal Public Defender, Washington, DC, and Leigh A. Kenny, Asst. Federal Public Defender, Washington, DC, for defendant.

### MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

At the close of the Government's case-in-chief, the Defendant filed a "Motion for Judgment of Acquittal on Count One Charging Attempted Assassination of the President." [1] The next morning, the Government filed an Opposition thereto. After a hearing on March 24, 1995, the Court denied the Defendant's Motion. This Memorandum Opinion shall set forth the reasons for the Court's ruling.

### BACKGROUND

To support Count One charging the Defendant with attempted assassination of the President in violation of 18 U.S.C. § 1751(c), the Government presented evidence that a

1. Defense counsel further moved orally for judgment of acquittal on all Counts, but only argued the grounds for acquittal on Count One as well as the Counts charging the Defendant with assault on various officers of the United States Secret Service.

White House visitor who resembles President Clinton, Mr. Dennis Basso, was standing on the White House grounds with three other men when the Defendant began shooting. The Government presented further evidence that the bullets struck trees and the building in the area where Mr. Basso was standing, and that the shooting occurred immediately after two school children mistook a man standing in that location for Bill Clinton. The purpose of presenting this and other related evidence, of course, was to persuade the jury that the Defendant shot at Mr. Basso believing him to be the President of the United States.

In addition to the evidence regarding the events on the day of the shooting, October 29, 1994, the Government submitted evidence that the Defendant had told other people of his desire to kill the President; that he wrote materials that threatened the life of the President and other government officials;[2] that he bought a firearm; that he bought multiple round clips and multiple rounds of ammunition for that firearm; that he bought a trench coat to conceal the firearm; that he bought a folding stock and pistol grip for the firearm so that it could be folded up and concealed under the trench coat; and that he traveled to Washington, D.C., and waited outside the White House for the opportunity

to make an attempt on the life of the President of the United States. Based on all of the evidence proffered, the jury convicted the Defendant on Count One, attempted assassination of the President, in addition to the other nine Counts of the Indictment.

### DISCUSSION

**I. NOTWITHSTANDING DEFENSE COUNSEL'S ASSERTION TO THE CONTRARY, THE DEFENDANT'S CLAIM IS ONE OF LEGAL IMPOSSIBILITY, WHICH THE COURT FINDS IS NOT A VALID DEFENSE TO THE CHARGE OF ATTEMPTED ASSASSINATION OF THE PRESIDENT**

In his Motion, the Defendant argued that, because Dennis Basso is not the President of the United States or another official identified in 18 U.S.C. § 1751,[3] the Defendant could not have been prosecuted under that statute had he succeeded in killing Mr. Basso and, therefore, he could not be charged with attempting to commit that crime.

▮▮▮▮ Although counsel for the Defendant asserted at the hearing that the Motion presented "a statutory construction argument combined with a jurisdiction argument,"[4]

---

2. Such materials, all of which were written in the Defendant's handwriting and/or contained his fingerprints, included a road atlas containing the statement "Kill the Pres!" (Govt's Exh. 178); a letter with the statement "[c]an you imagine a higher moral calling than to destroy someone's dreams with one bullet" (Govt's Exh. 179); a Sears business card with the phrase "Kill All Government Offices and Department Heads" written on the back (Govt's Exh. 187); a note containing the statement "Waging War towards ... The U.S. Government + it's Agentcies [sic]." (Govt's Exh. 189); a Duran's Upholstery business card with the statement "Time to take Our Country Back" and the Defendant's signature on the back (Govt's Exh. 209); a Duran's Upholstery business card with the statement "Death to all Government Officials" and the Defendant's signature on the back (Govt's Exh. 210); a handwritten letter on Embassy Suites stationary containing the statement "the Revolution starts today ... because of the F[---]ing Government" (Govt's Exh. 215); and a yellow pages directory with a picture of President Clinton on the cover, his head circled with an "X" drawn through it (Govt's Exh. 219).

3. 18 U.S.C. § 1751 provides in pertinent part that:

(a) Whoever kills
(1) any individual who is the President of the United States, or the President-elect, the Vice President, or, if there is no Vice President, the officer next in order of succession to the Office of the President of the United States, the Vice President-elect, or any person who is acting as President under the Constitution and laws of the United States ... shall be punished as provided by sections 1111 and 1112 of this title.
(b) Whoever attempts to kill or kidnap any individual designated in subsection (a) of this section shall be punished by imprisonment for any term of years or for life.

(j) In a prosecution for an offense under this section the Government need not prove that the defendant knew that the victim of the offense was an official protected by this section.

4. While the Defendant offered no legislative history to support his "statutory construction" argument, the Court finds seriously incomplete the

and "not impossibility at all," the Court is wholly unpersuaded by defense counsel's semantical dance. Transcript of proceedings on March 24, 1995 [hereinafter "Tr."] at 7–8. The Defendant's argument, however couched by his counsel, is essentially one of legal impossibility. "Legal impossibility is said to occur where the intended acts, even if completed, would not amount to a crime." *United States v. Berrigan*, 482 F.2d 171 (3rd Cir.1971); *United States v. Frazier*, 560 F.2d 884, 888 (8th Cir.1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978).[5] Thus, relying upon *Berrigan* (among other impossibility cases), the Defendant contended that "because the act would not have been a violation of Section 1751 if it 'had been con-

summated,' the act which falls short cannot then be an 'attempted' violation of the statute." Motion at 7. This, at bottom, is a claim of legal impossibility, pure and simple.

Viewing the Defendant's argument as such, the Court finds that it must fail. Aside from the Third Circuit in *Berrigan*, every Circuit that has considered the defense of impossibility has rejected it—a fact of critical importance which defense counsel conveniently ignored in representing that *"[i]t is without question* that 'a person who commits or attempts to commit what is not a crime in law cannot be convicted of attempting to commit a crime....'"* Motion at 4 (emphasis supplied) (quoting *Berrigan*, 482 F.2d at 186).[6] The Court takes this opportunity to

---

Defendant's suggestion that, under *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), the Court lacks jurisdiction over Count One because Mr. Basso is not "a person holding a status designated by the statute...." Motion at 3.

Although the *Feola* Court did observe that the "federal officer" requirement of 18 U.S.C. § 111 (which prohibits assault on such individuals) is jurisdictional, if further noted that stating the issue that way "has the potential to mislead." *Id.* at 676, 676 n. 9, 95 S.Ct. at 1260, 1260 n. 9. The Court explained, "a requirement is sufficient to confer jurisdiction on the federal courts for what otherwise are state crimes precisely because it implicates factors that are an appropriate subject of federal concern." *Id.* Thus, "where Congress seeks to protect the integrity of federal functions and the safety of federal officers, the interest is sufficient to warrant federal involvement." *Id.* The Defendant proffers no reason why such an interest is not present in this case so as to confer jurisdiction in this Court over the crime charged in Count One. In the Court's view, under *Feola*, the nation's interest in protecting the life of the President of the United States is sufficient to warrant federal involvement in an attempt on that life where the essential elements of the crime are met—namely, specific intent to kill the President and a substantial step towards killing him—notwithstanding the happenstance that the completed act would not have led to the President's death under the facts of a particular case. To hold otherwise would be to frustrate the apparent intent of Congress in passing 18 U.S.C. § 1751. *Cf. id.* at 678, 95 S.Ct. at 1260 (observing that if the primary purpose of protecting federal law enforcement personnel with 18 U.S.C. § 111, that purpose would be frustrated by imposing a strict scienter requirement).

5. "[F]actual impossibility is said to occur when extraneous circumstances unknown to the actor or beyond his control prevent consummation of

the intended crime." *Berrigan*, 482 F.2d at 188. While, as explained below, the law is unsettled as to whether legal impossibility is a valid defense, factual impossibility is not a defense to an attempt charge. *United States v. Hamrick*, 43 F.3d 877, 885 (4th Cir.1995) (en banc); *United States v. Contreras*, 950 F.2d 232, 237 (5th Cir.1991), *cert. denied*, 504 U.S. 941, 112 S.Ct. 2276, 119 L.Ed.2d 202 (1992); *United States v. Luttrell*, 889 F.2d 806, 810 (9th Cir.1989), *vacated in part on other grounds*, 923 F.2d 764 (9th Cir.1991), *cert. denied*, 503 U.S. 959, 112 S.Ct. 1558, 118 L.Ed.2d 207 (1992); *United States v. Brooklier*, 459 F.Supp. 476 (C.D.Cal.1978). *See* Order entered March 20, 1995, at 5–6 (holding that factual impossibility is not a defense to an attempt charge). In any event, categorizing a case as involving legal versus factual impossibility is difficult, if not pointless. *See, e.g., Brooklier*, 459 F.Supp. at 497; *United States v. Darnell*, 545 F.2d 595, 597 (8th Cir.1976) (legal versus factual impossibility are logically indistinguishable), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1134, 51 L.Ed.2d 556 (1977); *United States v. Parramore*, 720 F.Supp. 799, 800 (N.D.Cal.1989) ("Suffice it to say that the common law has rejected the impossibility defense."). Indeed, implicit in the Court's Order of March 20, 1995 was an understanding that the impossibility issue raised by the defense (but not yet fully briefed) was one of factual impossibility. Framed in this way, the fact that the person whom the Defendant shot at was not, in fact, President Clinton was an extraneous circumstance, unknown to him, which prevented consummation of the intended crime.

6. Although Ms. Kenny signed the Motion and Mr. Kramer argued it, the Court does observe that it recalls Ms. Kenny representing that neither she nor Mr. Kramer drew the Motion; rather, someone else in the Federal Public Defender's office drafted it.

admonish defense counsel for failing to abide by the Code of Professional Responsibility which "prescribe[s] circumstances in which an attorney must disclose facts and law contrary to his or her client's interests." *McCoy v. Court of Appeals of Wisconsin, Dist. 1,* 486 U.S. 429, 440–41, 108 S.Ct. 1895, 1903, 100 L.Ed.2d 440 (1988) (citing Rule 3.3 of the ABA Model Rules of Professional Conduct (1984) and G. Hazard & W. Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct 352 (1985)); Rule 3.3 of the District of Columbia Bar Rules Annotated (1994). As the Supreme Court observed, the commentary to Rule 3.3 provides that "'there are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation.'" *Id.* at 441 n. 14, 108 S.Ct. at 1903 n. 14. Under the circumstances at bar, where the Motion at issue was of grave importance and defense counsel had ample time to prepare it, and where the authority adverse to the Defendant's position is overwhelming, the Court observes that defense counsel's omission borders on just such an affirmative misrepresentation. Indeed, it is simply inaccurate to state that *Berrigan* is "without question" the law. Motion at 4.

Rather, there is no consensus amongst the federal courts on the subject of impossibility, with most courts and commentators rejecting *Berrigan*'s strict recognition of legal impossibility as a valid defense. *United States v. Oviedo,* 525 F.2d 881, 883–84 (5th Cir.1976); *United States v. Brooklier,* 459 F.Supp. 476, 480 (C.D.Cal.1978). The Circuit cases dealing with legal impossibility fall into three

categories. While the Third Circuit held in *Berrigan* that, regardless of criminal intent, legal impossibility is a valid defense, the Second Circuit's view is that, consistent with the Model Penal Code, "attempt is established when 'the defendants' actions would have constituted the completed crime if the surrounding circumstances were as they believed them to be.'" *United States v. Marin,* 513 F.2d 974, 976 (2d Cir.1975) (quoting *United States v. Heng Awkak Roman,* 356 F.Supp. 434, 434 (S.D.N.Y.), *aff'd,* 484 F.2d 1271 (2d Cir.1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974)). The Fifth Circuit takes a middle ground, requiring "that the objective acts of the defendant, taken as a whole, strongly corroborate the required culpability" for criminal attempt. *United States v. Korn,* 557 F.2d 1089, 1091 (5th Cir.1977); *Oviedo,* 525 F.2d at 885.[7] The Ninth and Eleventh Circuits have specifically adopted the Fifth Circuit view.[8] *See United States v. Everett,* 692 F.2d 596, 600 (9th Cir.1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); *United States v. Bagnariol,* 665 F.2d 877, 896 (9th Cir.1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982); *United States v. Innella,* 690 F.2d 834, 834 (11th Cir.1982), *cert. denied,* 460 U.S. 1071, 103 S.Ct. 1526, 75 L.Ed.2d 949 (1983).

Upon careful consideration of these and other cases, the Court flatly rejects the *Berrigan* approach urged by the Defendant. Indeed, the Third Circuit itself has recognized that the doctrine of impossibility "ha[s] become 'a source of utter frustration,' plunging

---

7. Apparently, the Court of Appeals for the District of Columbia Circuit has not squarely addressed the issue. *See United States v. Ng Wah,* 1990 WL·212550 at *2 (D.C.Cir.1990) (unnecessary to address impossibility issue since defendant admitted committing the crime when he pled guilty), *cert. denied,* 499 U.S. 980, 111 S.Ct. 1634, 113 L.Ed.2d 729 (1991).

8. Consistent with the modern approach of focusing on criminal intent with or without corroborating acts to find a defendant liable for an attempt charge, many courts have eschewed any effort to classify a case as involving legal versus factual impossibility in favor of a general finding that "however ... impossibility may be categorized, [if] the defendants' objective ... was criminal, impossibility is no defense." *United States*

*v. Heng Awkak Roman,* 356 F.Supp. 434, 438 (S.D.N.Y.), *aff'd,* 484 F.2d 1271 (2d Cir.1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974). *See also United States v. Quijada,* 588 F.2d 1253, 1255 (9th Cir.1978) (rejecting any distinction between legal and factual impossibility and holding that "generally a defendant should be treated in accordance with the facts as he supposed them to be"); *United States v. Parramore,* 720 F.Supp. 799, 800 (N.D.Cal. 1989) (same); *United States v. Deangelis,* 430 F.Supp. 327 (D.P.R.1976) (noting that the distinction between legal and factual impossibility is unsettled and holding that criminal intention to commit substantive crime, coupled with objective acts, is sufficient to charge defendants with attempt).

the state courts into a 'morass of confusion,'" and that it "ha[s] lost whatever acceptance at common law it may have possessed when the statute considered in *Berrigan* was enacted in 1930." *United States v. Everett*, 700 F.2d 900, 905 (3rd Cir.1983) (quoting *United States v. Thomas*, 13 U.S.C.M.A. 278, 286–87, 32 C.M.R. 278, 286–87 (1962)). Accordingly, the Third Circuit held that impossibility is no defense to the charge of attempted distribution of a controlled substance under 21 U.S.C. § 846, recognizing that the doctrine of impossibility, "whose viability at common law was questionable at best, should not hamper federal efforts to enforce the drug laws." *Id.* at 907.

Furthermore, the Court is wholly unpersuaded by the Defendant's heavy reliance on *People v. Jaffe*, 185 N.Y. 497, 78 N.E. 169 (1906), a case almost a century old, for the proposition that a defendant cannot be charged with an attempt to commit an act which would not have been a crime had it been consummated. What defense counsel failed to advise the Court is that *Jaffe* is no longer the law in New York state.[9]

In turn, the Court declines to follow Judge Flannery's application of the *Jaffe* rationale in *United States v. Hair*, 356 F.Supp. 339 (D.D.C.1973). Observing that the impossibility defense is " 'so fraught with intricacies and artificial distinctions that [it] has little value as an analytical method for reaching substantial justice,' " Judge Flannery nevertheless leaves the quandary up to the legislature and follows *Jaffe* as the "more logical" approach. *Id.* at 342 (quoting *State v. Moretti*, 52 N.J. 182, 244 A.2d 499 (1968)). In light of the substantial authority rejecting the defense of impossibility, however, the Court cannot adopt Judge Flannery's cursory reasoning.

Finally, none of the other cases cited by the Defendant would persuade the Court to grant the Defendant's Motion. While, like *Jaffe*, the majority of state cases the Defendant relies upon have been legislatively rejected,[10] and are otherwise of dubious authoritative value in this Court, the federal cases to which he cites are largely inapplicable here as they involve a completed crime rather than the inchoate crimes of attempt or conspiracy. *See, e.g., United States v. Monasterski*, 567 F.2d 677, 684 (6th Cir.1977) (cannot convict for receipt of stolen goods where owner had recovered possession before delivery to the intended receiver); *United States v. Warshawsky*, 20 F.3d 204, 208 (6th Cir.1994) (questioning *Monasterski*'s applicability to the crime of conspiracy, which is complete without satisfaction of each element of the underlying offense).

 Rather, the Court finds that the better approach is that espoused by the majority of the Circuits that have addressed the impossibility defense, to wit, that a defendant may be convicted of attempt where his objective conduct, taken as a whole, corroborates the requisite criminal intent. In essence, this view mirrors the dual elements of the crime of attempt: that the defendant had the specific intent to commit the substantive crime and that he took a substantial step towards commission of that crime. *See Braxton v. United States*, 500 U.S. 344, 349, 111 S.Ct. 1854, 1858, 114 L.Ed.2d 385 (1991) (holding that to be responsible for the crime of attempting to kill a deputy marshal under 18 U.S.C. § 1114, the defendant "must have taken a substantial step towards that crime, and must have had the requisite *mens rea* "). Under 18 U.S.C. § 1751(b), the crime of at-

---

9. N.Y.Penal Law tit. 40, § 110.10 (McKinney 1995) provides, in pertinent part, that:

it is no defense to a prosecution for [an] attempt that the crime charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission, if such crime could have been committed had the attendant circumstances been as such person believed them to be.

10. For example, the Defendant cites to *People v. Rollino*, 37 Misc.2d 14, 233 N.Y.S.2d 580 (1962) which, as set forth in Note 9, was superseded by

statute. Similarly, the Defendant relies on *State v. Guffey*, 262 S.W.2d 152 (Mo.App.1953), *State v. Taylor*, 345 Mo. 325, 133 S.W.2d 336 (1939), and *State v. Butler*, 178 Mo. 272, 77 S.W. 560 (1903), which are also no longer the law. *See* Mo.Stat. tit. 38, § 564.011 (V.A.M.S.1995) ("[i]t is no defense to a prosecution [for attempt] that the offense attempted was, under the actual attendant circumstances, factually or legally impossible of commission, if such offense could have been committed had the attendant circumstances been as the actor believed them to be").

tempt is complete once these elements are met, that is, once the actor takes a substantial step towards killing an official designated under the statute with the specific intent to do so.

█ In considering a Motion for judgment of acquittal, the Court must view the evidence in the light most favorable to the Government. *United States v. Kelley,* 36 F.3d 1118, 1126 (D.C.Cir.1994); *United States v. Contreras,* 950 F.2d 232, 236 (5th Cir.1991), *cert. denied,* 504 U.S. 941, 112 S.Ct. 2276, 119 L.Ed.2d 202 (1992). Based on the evidence proffered by the Government in this case, a reasonable jury could find that this crime of attempt was complete long before the Defendant even pulled the trigger of his firearm—when, for example, having left a trail of written threats on the President and other government officials from Colorado to Washington, D.C., he arrived at the White House on the morning of October 29, 1994, concealing a rifle under his trench coat. The fact that Mr. Basso was standing in front of the White House at the time of the shooting, while President Clinton was elsewhere, is irrelevant. Under the approach adopted by the Fifth, Ninth and Eleventh Circuits, and consistent with that of the Second Circuit, the evidence was more than sufficient to show that the Defendant had the specific intent to kill the President and that his intent was corroborated by the steps he took in preparation for the actual shooting.

## II. THE COURT FINDS NO MERIT TO THE DEFENDANT'S CLAIM THAT THE GOVERNMENT FAILED TO PROVE HE HAD THE SPECIFIC INTENT TO KILL THE PRESIDENT

█ Relying again on *Berrigan,* the Defendant further argued in his Motion that the Government failed to prove that the Defendant had the specific intent to kill the President, an essential element of 18 U.S.C. § 1751. In particular, the Defendant attempts to distinguish motive, desire and expectation from criminal intent, arguing that

under the Government's theory, while the Defendant had the motive or desire to kill the President, he ultimately *intended* to kill Mr. Basso when he shot at him, having mistook Mr. Basso for the President. Motion at 8 (citing *Berrigan,* 482 F.2d at 188 n. 35 (quoting Keedy, Criminal Attempts at Common Law, 102 U.Pa.L.Rev. 319, 466–67 n. 29 (1955)). In this Court's view, however, neither a footnote in *Berrigan* nor the 1955 law review article it cites are persuasive authority for drawing such a distinction. Rather, the Court of Appeals for this Circuit has made clear that specific intent refers to the "bad purpose" of the actor, and the Government presented ample evidence upon which the jury could find that the Defendant's purpose in acting was to kill President Clinton. *United States v. Haldeman,* 559 F.2d 31, 113 (D.C.Cir.1976) (en banc), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). Accordingly, the Court rejects the Defendant's argument that the Government failed to present sufficient evidence of specific intent to kill President Clinton to warrant sending Count One to the jury.

## III. AS THIS COURT HAS ALREADY RULED THAT ASSAULT IS A GENERAL INTENT CRIME, THE DEPENDANT'S ARGUMENT FOR JUDGMENT OF ACQUITTAL ON THE ASSAULT COUNTS MUST FAIL

█ With respect to the assault Counts, defense counsel briefly argued that, as to three of the officers, "the evidence is insufficient ... that Mr. Duran had any idea that they were there." Tr. at 8. As the Court had already held in its Order of March 20, 1995, however, assault is a general intent crime,[11] such that " 'an actor must entertain merely the criminal intent to do the acts therein specified.' " *United States v. Kleinbart,* 27 F.3d 586 (D.C.Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994) (quoting *United States v. Feola,* 420 U.S. 671, 686, 95 S.Ct. 1255, 1264, 43 L.Ed.2d 541 (1975)). *See* Order entered March 20,

---

**11.** Courts, however, have called into question whether the distinction between specific and general intent is helpful to juries. *See, e.g., Unit-* *ed States v. Arambasich,* 597 F.2d 609, 611–13 (7th Cir.1979).

**584**

1995. "Where this is so and it is shown that a person has knowingly committed an act which the law makes a crime, intent may be inferred from the doing of the act." *Haldeman,* 559 F.2d at 113. Under this definition of general intent, there is no question that the Government proffered ample evidence in its case-in-chief to defeat a motion for judgment of acquittal on the assault Counts.

The Defendant's argument assumed that, notwithstanding the Court's ruling that assault on a federal officer is a general intent crime, the Government had to prove that the Defendant spotted the officers, pointed the weapon in their direction, and intentionally shot at them. Because the Defendant submitted no authority to support the proposition that such a showing is required for a general intent crime, the Court finds no merit to the Defendant's Motion for judgment of acquittal on the assault Counts.

In any event, the Court charged the jury in a manner not inconsistent with the Defendant's proposed instructions on this issue. At the charge conference held on April 2, 1995, counsel for the Defendant objected to the Court's instructing the jury that general intent may be inferred from the doing of the acts in question, namely, from the Defendant's use of a gun to assault the named officers while they were engaged in the performance of their official duties at the time of the crimes. In an effort to accommodate the Defendant in every possible way, the Court amended the definition in light of the Defendant's proposed jury instructions, and defense counsel did not object to this modification. In the Court's view, the final charge on this issue favored the Defendant by placing a heavier burden on the Government than did the Court's original instruction. The jury was instructed that the Government needed to prove under the assault Counts that the Defendant acted consciously, voluntarily and purposely, and not because of mistake, inadvertence or accident. Under *Haldeman,* this definition appears closer to describing specific intent than general intent. The Court observes that, in the end, defense counsel failed to argue pointedly the whole matter of requisite mens rea to the jury.

## CONCLUSION

For the foregoing reasons, the Court denied the Defendant's "Motion for Judgment of Acquittal on Count One Charging Attempted Assassination of the President," as well as his oral Motion for judgment of acquittal on the assault Counts.